No. 99,657

STATE OF KANSAS, *Appellee*, v. GERALD E. GONZALES, *Appellant*.

(212 P.3d 215)

Opinion filed July 24, 2009.

*Rachel L. Pickering*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Lesley A. Isherwood*, assistant district attorney, argued the cause, and *Nola Tedesco Foulston*, district attorney, and *Steve Six*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: Gerald E. Gonzales was convicted of one count of aggravated indecent liberties with a child under the age of 14 contrary to K.S.A. 2006 Supp. 21-3504(a)(3), one count of aggravated indecent liberties with a child contrary to K.S.A. 2006 Supp. 21-3504(a)(1) (sexual intercourse with a child who is 14 or more years of age but less than 16 years of age), and single counts of rape and violation of a protective order. For his conviction of aggravated indecent liberties with a child under the age of 14, Gonzales received a sentence of life imprisonment without the possibility of parole for 25 years and postrelease supervision for life pursuant to K.S.A. 2006 Supp. 21-4643, commonly known as Jessica's Law.

On appeal, Gonzales seeks to reverse his convictions and vacate his hard 25 life sentence. In seeking to reverse his convictions, Gonzales argues he was denied a fair trial because his counsel was ineffective. Alternatively, Gonzales focuses on his conviction and sentence under Jessica's Law, arguing: (a) the trial court lacked jurisdiction to sentence him under K.S.A. 2006 Supp. 21-4643 because the charging instrument failed to allege that he was over the age of 18, (b) a defendant's age at the time of the offense is an element of the crime of indecent liberties with a child which the trial court failed to include in the jury instructions, violating his constitutional rights, and (c) his disproportionate sentence violates the right against cruel or unusual punishment under § 9 of the

Kansas Constitution Bill of Rights or, similarly, the Eighth Amendment to the United States Constitution.

We affirm the district court's denial of Gonzales' request for a new trial, finding that substantial competent evidence supports the district court's findings of fact and the court's conclusion that trial counsel acted within the wide range of reasonable professional judgment was not erroneous. Nevertheless, we vacate Gonzales' sentence under Jessica's Law based on this court's recent dispositive holding in *State v. Bello*, 289 Kan. 191, 211 P.3d 139 (2009) (2009), which concluded that the defendant's age must be determined by a jury. We conclude, however, that Gonzales was validly convicted of aggravated indecent liberties with a child under the age of 14 and remand for resentencing pursuant to the Kansas Sentencing Guidelines Act (KSGA).

### Facts and Procedural Background

The State's complaint against Gonzales was amended twice and ultimately charged him with four counts:

Count I—one count of aggravated indecent liberties with a child in violation of K.S.A. 2006 Supp. 21-3504(a)(1), by engaging in sexual intercourse with C.M., a 14-year-old child, on or between January 1, 2006, to November 30, 2006;

Count II—one count of aggravated indecent liberties with a child in violation of K.S.A. 2006 Supp. 21-3504(a)(3)(A), by lewdly fondling or touching N.M., a child under 14 years of age, on or between August 1, 2006, to November 30, 2006;

Count III—one count of rape in violation of K.S.A. 2005 Supp. 21-3502(a)(2), by engaging in sexual intercourse with C.M., a child under 14 years of age, on or between August 1, 2004, to January 1, 2006;

Count IV—one count of unlawfully, knowingly, or intentionally violating a protective order issued by the district court in violation of K.S.A. 21-3843(a)(1), by contacting Anna Martinez by telephone the night before the preliminary hearing.

The two victims in Counts I, II, and III were the daughters of Martinez, with whom Gonzales had a romantic relationship. He lived with Martinez and her family during the time of the alleged

incidents. One of the victims, C.M., suffered from cerebral palsy, attended special education classes at school and, according to her mother, was mentally and emotionally "developmentally slow." C.M.'s younger sister, N.M., was the other victim.

At trial, the jury heard evidence of the two victims' statements to investigating officers and also heard the victims testify. Highly summarized, C.M. told officers that Gonzales had sex with her on her mother's bed in excess of 15 times over a 2-year period. The other victim, N.M., told police that Gonzales had forced her to "kiss him nasty." N.M. described that Gonzales would put her up against a door, push up her shirt, and feel her breasts with his hands and also kiss them. When asked where this happened, N.M. said sometimes it happened in her room and sometimes in her mother's room. And it always happened when her mom was at work and before school.

The jury also heard police testify regarding their interview of Gonzales. During his interview, Gonzales denied having any sexual contact with N.M. and initially denied engaging in sexual acts with C.M. Ultimately, he admitted having sexual contact with C.M. but claimed there was one incident and that it was consensual. Gonzales told detectives that C.M. was very flirtatious with him after her mother would leave the house or when he and C.M. were alone together. Gonzales said one Saturday morning, approximately 6 months before his arrest, C.M. approached him in the living room, removed her shorts, grabbed his penis, and tried to get him aroused. Gonzales indicated that he tried to have sex with C.M., but because he did not have an erection, "I couldn't put it in, man." So Gonzales told C.M. to stop and go take a shower.

The jury convicted Gonzales as charged. Before sentencing, defense counsel filed a motion for new trial based on insufficient evidence, which the district court denied. In addition, Gonzales filed a pro se supplemental motion for new trial based on multiple allegations of ineffective assistance of trial counsel. The district court appointed new counsel to represent Gonzales for purposes of sentencing and held a hearing on the pro se supplemental motion. After considering the evidence and the testimony of Gonzales' trial counsel, the district court found that counsel's performance

"fell within the wide range of reasonable professional assistance" and denied Gonzales' request for a new trial.

The court proceeded immediately to sentencing, and Gonzales' newly appointed defense counsel offered an oral motion seeking a downward durational or dispositional departure sentence applicable to the aggravated indecent liberties conviction involving the lewd fondling and touching of N.M. This offense (Count II), in violation of K.S.A. 2006 Supp. 21-3504(a)(3)(A), subjected Gonzales to a presumptive life sentence with a mandatory minimum of 25 years' imprisonment under K.S.A. 2006 Supp. 21-4643(a)(1)(C). The court denied the departure motion.

Gonzales filed a timely appeal. This court's jurisdiction is under K.S.A. 22-3601(b)(1) (off-grid crime; life sentence).

### I. Motion for New Trial

Gonzales contends that his trial counsel provided constitutionally defective representation when counsel failed to provide substantial communication with Gonzales, failed to adequately cross-examine victim C.M., failed to consider Gonzales' suggestions in support of his defense, and failed to review police reports with Gonzales. He contends that these failures by counsel were so prejudicial he was deprived of a fair trial.

Twice Gonzales alerted the district court to his concerns about his trial counsel. After the preliminary hearing, Gonzales filed a pro se motion to dismiss counsel, arguing that his attorney was working against him. After holding a hearing, the court denied Gonzales' motion and found that he presented no evidence showing his attorney was not working as his advocate. Then after trial, Gonzales filed a pro se supplemental motion for new trial based on allegations of ineffective assistance of trial counsel. The court held a posttrial hearing on Gonzales' pro se supplemental motion, at which Gonzales was represented by newly appointed counsel. After hearing arguments and considering testimony from Gonzales and his trial counsel, the court ordered the parties to return the following week for a ruling on the matter.

One week later, at the motions and sentencing hearing, the district court decided to treat Gonzales' pro se supplemental filing as

a K.S.A. 60-1507 motion. After making thorough and specific findings regarding each of Gonzales' allegations of ineffective assistance of trial counsel, which will be discussed further below, the court concluded that "the performance of [trial counsel] fell within the wide range of reasonable professional assistance." Also, the district court concluded that "it cannot be said that the performance of [trial counsel] undermined the adversarial process such that a just result was not obtained." Consequently, the court denied Gonzales' motion.

A. General Standards

The Sixth Amendment to the United States Constitution guarantees in "all criminal prosecutions" that "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." This court has explained that the right to counsel guaranteed by this provision is the right to effective assistance of counsel. *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985) (adopting the standards set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052, [1984]); see *State v. Overstreet*, 288 Kan. 1, 20, 200 P.3d 427 (2009); *Bledsoe v. State*, 283 Kan. 81, 90, 150 P.3d 868 (2007).

To support a claim of ineffective assistance of counsel, a defendant must demonstrate that (1) counsel's performance was deficient and (2) counsel's deficient performance was sufficiently serious to prejudice the defense and deprive the defendant of a fair trial. Thus, the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. [Citations omitted.]" *Bledsoe*, 283 Kan. at 90.

In *Bledsoe*, this court explained in detail the two steps in the ineffective assistance of counsel analysis, stating:

"The first prong of the test for ineffective assistance of counsel requires a defendant to show that counsel's representation fell below an objective standard of reasonableness, considering all the circumstances. Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and

to evaluate the conduct from counsel's perspective at the time. We must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. [Citation omitted.]

"Once a defendant has established counsel's deficient performance, the defendant also must establish prejudice by showing that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. [Citation omitted.]" 283 Kan. at 90-91.

In recognizing the presumption that counsel's conduct is reasonable, in *Bledsoe* we noted the distinction between decisions that are to be made by a criminal defendant and the areas of trial strategy that are left to the professional judgment of the attorney, stating:

"[C]ertain decisions relating to the conduct of a criminal case are ultimately for the accused: (1) what plea to enter; (2) whether to waive a jury trial; and (3) whether to testify. Others are ultimately for defense counsel. The decisions on what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike, what trial motions should be made, and all other strategic and tactical decisions are the exclusive province of the lawyer after consultation with his or her client." 283 Kan. at 92.

See also *Moncla v. State*, 285 Kan. 826, 837-38, 176 P.3d 954 (2008) (courts will defer to counsel on matters of trial strategy).

Nevertheless, "[m]ere invocation of the word 'strategy' does not insulate the performance of a criminal defendant's lawyer from constitutional criticism," especially " 'when counsel lacks the information to make an informed decision due to inadequacies of his or her investigation.' " *Wilkins v. State*, 286 Kan. 971, 982, 190 P.3d 957 (2008).

B. Standard of Review

In this case, the record reflects that the district court was aware of and applied these general standards in making findings of fact based on the evidence presented. When, as in the present case, an evidentiary hearing has been conducted on a claim of ineffective assistance of counsel, an appellate court determines whether the factual findings of the district court are supported by substantial competent evidence and whether those findings are sufficient to

support its conclusions of law. The court's legal conclusions are reviewed de novo. *Overstreet*, 288 Kan. at 24.

C. Communication

In arguing that the district court erred, Gonzales first suggests that his trial counsel's assistance was ineffective because there was a lack of communication between his trial counsel and himself. However, many of Gonzales' arguments could be construed to fall under the category of dissatisfaction with his counsel's trial strategy given the outcome of his case.

At the hearing on Gonzales' pro se supplemental motion, Gonzales testified that his trial counsel failed to communicate with him in that she only met with him three or four times before the trial. Gonzales testified:

"The lack of communication . . . became clear to me when I tried to explain to [trial counsel] my innocence. She insisted on the plea, without hearing any of my facts. I tried to explain to her 20 years for a crime I did not commit is not negotiable. She still . . . insisted on a plea, like, if she was doing me a favor.

. . . .

". . . [A]nd she wanted me to waive my rights, but I refused to waive my rights.

. . . .

"I asked her about the defense, but she had another defense for me."

When asked if Gonzales ever had an opportunity to discuss the prosecution's case with his trial counsel, Gonzales testified: "Yes. I tried to speak to her about it, but she already had it set in her mind what she was going to do beforehand."

Gonzales argues that he never understood his defense, but his testimony indicates otherwise. At the ineffective assistance of counsel hearing, Gonzales indicated that his trial counsel took the case to trial because Gonzales wanted to do so and their defense plan was to attack the victims' credibility and to show a lack of physical evidence supporting the charged crimes. Gonzales does not identify another defense his trial counsel supposedly failed to discuss with him. "Mere conclusory statements" are not sufficient to satisfy this burden of proof. *State v. Moody*, 35 Kan. App. 2d 547, Syl. ¶ 10, 132 P.3d 985, *rev. denied* 282 Kan. 794 (2006); see *State v. Jackson*, 255 Kan. 455, 463, 874 P.2d 1138 (1994).

Trial counsel testified regarding her communications with Gonzales and indicated that she met with him several times over the course of his legal representation. The district court observed that counsel submitted her case log, which listed seven pretrial contacts with Gonzales—three jail visits and four court appearances. The court further noted that the court appearances consisted of representation at the preliminary hearing and three pretrial motion hearings, and trial counsel testified that she conferred with Gonzales before and after the court hearings. Also, counsel testified that she told Gonzales of the type of plea she thought the State might accept, so he could make an informed decision. He refused to enter a plea, so they proceeded with a jury trial. On recross-examination, trial counsel testified regarding the difficulty she had in explaining strategy concerns with Gonzales:

"It was very difficult, in all honesty, in—in meeting with Mr. Gonzales. He has a very focused, kind of one-track mind, sounds derogatory, and I don't mean it that way, but he's very focused, so he would focus in on certain things. Getting him off of that track was about impossible."

The district court found no merit to Gonzales' allegation that his trial counsel did not prepare a defense for him. The court found the evidence showed the opposite. And the court pointed to the fact that trial counsel prepared a motion in limine and a motion to suppress Gonzales' statement. Substantial competent evidence supports the district court's findings.

### D. Witness Suggestions

Gonzales also contends his trial counsel was ineffective for failing to consider the witnesses he suggested in support of his defense. He highlights this attack by pointing to a potential breakdown in communication shown by a conflict in the hearing testimony of Gonzales and his trial counsel regarding whether Gonzales asked her to subpoena an attorney who was representing Gonzales in a separate child custody matter. At the hearing, Gonzales testified that he had instructed his trial counsel to subpoena his family law attorney to testify in his defense. Gonzales indicated that he had wanted evidence admitted of an occasion when Martinez allegedly tried to interfere with the custodial rights of his children from a

previous relationship by telling Gonzales' family law attorney not to accept Gonzales' calls (presumably due to the allegations in the present case). Gonzales also wanted his family law attorney to testify regarding the protection from abuse (PFA) order that Martinez acquired after Gonzales was taken into custody in this case. According to Gonzales, his attorney was present at the time the PFA order was filed and allegedly commented to Gonzales "the things that [Martinez] was doing wasn't right."

Gonzales' trial counsel testified at the hearing that Gonzales never specifically mentioned his family law attorney's name. Nor did Gonzales ever state that he wanted his family law attorney to testify at trial. The district court found counsel's testimony to be credible.

Gonzales also complains that he wanted his trial counsel to subpoena his mother to testify on his behalf at trial, but counsel did not do so. According to Gonzales, his mother would have attacked Martinez' credibility. Gonzales testified at the hearing that his mother lived across the street from him and Martinez at their previous address on Clayton Street and had already known Martinez from living in the neighborhood. Gonzales also indicated that during the time they lived on Clayton, Martinez was studying at home and did not have a job. He suggested that his mother would testify that Martinez was home during the day while Gonzales worked, which would lead to a conclusion that he had no time to have sexual contact with the girls. Gonzales also testified at the hearing that he and Martinez always "left together" from the Clayton residence.

Gonzales' trial counsel testified that she spoke to Gonzales' mother several times, and counsel's investigator, a former police officer, also spoke to her. However, trial counsel opined that as a fact witness, Gonzales' mother had nothing useful to add to the defense. She was not present during the sexual contact and would merely attack the character of Martinez. Further, Martinez' and Gonzales' schedules had changed after they moved from Clayton. The district court found that Gonzales' trial counsel, after careful and thorough investigation, made a well-reasoned decision concerning whether to call Gonzales' mother as a defense witness.

Another witness complaint involves the nurse who testified about her physical examination of C.M. after the reported sexual activity. Gonzales contends that his trial counsel should have cross-examined the nurse about a possible discrepancy in C.M.'s medical records regarding whether her hymen had ruptured. One doctor had reported that C.M.'s hymen had ruptured, and the strategy of Gonzales' trial counsel, which was followed, was to keep that information out of the trial. Gonzales' trial counsel thought the information would be damaging to Gonzales' defense. Instead, the nurse who found no physical injury to C.M. ultimately testified at trial. The district court found that Gonzales' trial counsel talked to him about this matter, provided him with discovery materials, and then prepared his defense.

In part, the district court's findings on these matters are based on the court's assessment of credibility. An appellate court does not reweigh evidence, substitute its evaluation of evidence for that of the district court, or pass on credibility of witnesses. *State v. Thomas*, 288 Kan. 157, 161, 199 P.3d 1265 (2009). Based on the evidence presented, substantial competent evidence supports the district court's finding that the decisions regarding whether to call certain individuals as defense witnesses were based on counsel's investigation. Further, the district court correctly concluded the decisions were matters of reasonable strategy.

E. Cross-examination of C.M.

Another point of contention for Gonzales regarding his trial counsel is the cross-examination of C.M. He contends that his trial counsel failed to point out the discrepancies between C.M.'s preliminary hearing testimony and her trial testimony. But Gonzales fails to specify with particularity the discrepancies of which he complains. He simply makes the blanket statement that counsel "failed to point out the discrepancies."

At the ineffective assistance of counsel hearing, Gonzales' trial counsel was asked on cross-examination what attempts she made to point out conflicts between the preliminary hearing testimony and the trial testimony. The following colloquy took place:

"A. That was . . . a little tricky. . . . [I]n all honesty, if I would change something about this trial, that would be it. Unfortunately, specifically with [C.M.] and her low kind of level of functioning, I felt that attacking her in front of the jury with the [preliminary] transcript was not something that was going to endear Mr. Gonzales and I to the jury. And I did not pursue that as much . . . as a trial strategy.

"Q. But looking back, perhaps you should have?

"A. It couldn't have hurt, obviously. At the time I was hoping to forestall the position that he is in right now, being found guilty of everything. But apparently, it could not have hurt, [in] hindsight."

On re-cross-examination, Gonzales' trial counsel confirmed that she did cross-examine C.M., but simply did not get aggressive with pointing out inconsistencies. And counsel indicated that she was a little concerned about C.M.'s ability to read a transcript and that this potential problem would make the jury more sympathetic towards C.M.

A review of C.M.'s cross-examination shows that Gonzales' trial counsel did attempt to display for the jury that C.M. might have had an ulterior motive for making accusations against Gonzales. The theory was that C.M. was unhappy with news that Gonzales and her mother were going to marry, and when C.M. had been told the news she responded that she would do anything to stop her mother from getting married.

The district court found that Gonzales' trial counsel competently cross-examined the State's witnesses "and attempted to attack the credibility of the two victims." It also observed that trial counsel showed there was a lack of physical evidence to corroborate the victims' allegations. Regarding C.M. in particular, the court stated:

"[Trial counsel] testified that she made the decision not to aggressively point out every inconsistency in the transcript, based on her training and experience of trying child sex cases. [She] testified she considered the fact that [C.M.] was a low-level functioning child who might not be able to read the transcript. Therefore, she opined that an aggressive Cross-Examination with the transcript would only engender sympathy for the child. In the Court's opinion, [trial counsel] made a sound, well-reasoned decision, based on her training and experience with child sex victims."

Generally, whether and how to conduct the examination of a witness is a matter of strategy left to trial counsel's reasonable pro-

fessional judgment. See *Wilkins*, 286 Kan. at 982; *State v. Gleason*, 277 Kan. 624, 647, 88 P.3d 218 (2004).

F. Police Reports

Finally, Gonzales argues that his trial counsel was ineffective for failing to thoroughly review the police reports with him and for advising him that he should not testify in his own defense at trial. At the ineffective assistance of counsel hearing, Gonzales acknowledged that he received copies of the police reports from his trial counsel, and he was aware that he could ask her questions about the reports. Gonzales' trial counsel testified that she and Gonzales "went over questions he had regarding the police reports at several conferences." On appeal, Gonzales fails to state with specificity what police report details he believes trial counsel should have discussed with him but failed to do.

Gonzales argues that he wanted to testify at trial, but his counsel advised against it. Gonzales' trial counsel testified at the ineffective assistance of counsel hearing that she did not think it was a good idea for Gonzales to open himself up to attack by the prosecutor, but she also informed Gonzales that it was his decision to make. Trial counsel testified that she did not conduct a mock cross-examination with Gonzales and that she generally does not perform mock cross-examinations with clients because she does not want them to sound "coached" if they testify before the jury.

The district court pointed out that Gonzales had been advised on the record of his right to testify or not to testify. And he was also informed that it was his decision. Gonzales decided not to testify.

Under the circumstances, the district court determined that the performance of Gonzales' trial counsel fell within the wide range of reasonable professional assistance. In addition, the district court found: "[I]t cannot be said that the performance of [trial counsel] undermined the adversarial process such that a just result was not obtained."

G. Conclusion

In summary, there was substantial competent evidence to support the factual findings of the district court and those findings

support the district court's conclusion of law that Gonzales' trial counsel acted within the wide range of reasonable professional judgment. The district court did not err in denying Gonzales' request for a new trial based on a claim of ineffective assistance of trial counsel.

## II. Defendant's Age

In addition, Gonzales contends that a defendant's age is an essential element of an aggravated crime under K.S.A. 2006 Supp. 21-4643(a)(1). Because neither the charging document in this case nor the jury instructions addressed the fact that Gonzales was 18 years of age or older at the time he committed the offense of aggravated indecent liberties with a child under the age of 14, Gonzales contends that his conviction must be reversed and his sentence vacated.

Gonzales attacks this matter from several different angles, arguing that the district court lacked jurisdiction to sentence him under K.S.A. 2006 Supp. 21-4643, that his conviction for aggravated indecent liberties with a child is invalid, that his sentence must be vacated because the jury should have been instructed regarding the defendant's age and was required to find beyond a reasonable doubt that the defendant was 18 years of age or older at the time the crime was committed, that his sentence is cruel or unusual, and that the district court erred in denying his motion for departure. The common thread to Gonzales' argument that his conviction and sentence are invalid is that a defendant's age of 18 years or older is an essential element of the crime of aggravated indecent liberties with a child under the age of 14 when that crime is charged as an off-grid offense.

A. Standard of Review

Our review is unlimited where, as in this case, appellate arguments implicate concerns relating to statutory and constitutional interpretation. *State v. Bello*, 289 Kan. 191, 211 P.3d 139 (2009) (2009), slip op. at 6; *State v. Storey*, 286 Kan. 7, 9-10, 179 P.3d 1137 (2008) (statutory interpretation is question of law subject to de novo review); *State v. Allen*, 283 Kan. 372, 374, 153 P.3d 488 (2007) (constitutionality of sentencing statute is question of law

subject to unlimited review). Whether a complaint or information is sufficient to confer subject matter jurisdiction is also a question of law and, therefore, the same unlimited standard of review applies. *State v. Gracey*, 288 Kan. 252, 254, 200 P.3d 1275 (2009); *State v. McElroy*, 281 Kan. 256, 261, 130 P.3d 100 (2006).

## B. Defective Complaint

The Sixth Amendment to the United States Constitution gives an accused the right to "be informed of the nature and cause of the accusation"; the Kansas Constitution Bill of Rights, § 10 mandates that "the accused shall be allowed . . . to demand the nature and cause of the accusation against him." Generally, if a complaint fails to include an essential element of a crime charged, it is "fatally defective, and the trial court lacks jurisdiction to convict the defendant of the alleged offense." *State v. Moody*, 282 Kan. 181, 197, 144 P.3d 612 (2006).

Gonzales first observes that under K.S.A. 2006 Supp. 21-4643(a)(1), subject to certain exceptions inapplicable to this case, "a defendant who is 18 years of age or older and is convicted of the following crimes committed on or after July 1, 2006, shall be sentenced to a term of imprisonment for life with a mandatory minimum term of imprisonment of not less than 25 years." Among the enumerated crimes is aggravated indecent liberties with a child under the age of 14, a crime for which Gonzales was convicted. Gonzales contends that K.S.A. 2006 Supp. 21-4643 essentially establishes an aggravated form of the enumerated crimes such that the defendant's age (18 years or older) becomes an essential element which must be proved in order to obtain a conviction of that aggravated crime.

With that rationale in mind, Gonzales argues that the district court lacked jurisdiction to sentence him for any crime under K.S.A. 2006 Supp. 21-4643 because that statute requires the offender to be 18 years of age or older, and Count II, which involved aggravated indecent liberties with a child under the age of 14, in violation of K.S.A. 2006 Supp. 21-3504(a)(3), failed to allege that Gonzales was 18 years of age or older at the time he committed the offense. Gonzales clarifies that he is not claiming that the

charging document was defective. In other words, he does not dispute the validity of the complaint itself. Instead, he asserts that the district court did not have jurisdiction because the State failed to charge a "valid crime" under K.S.A. 2006 Supp. 21-4643.

Gonzales basically relies on the well-known rule, which states: " '[I]f a crime is not specifically stated in the information or is not a lesser included offense of the crime charged, the district court lacks jurisdiction to convict a defendant of the crime, regardless of the evidence presented.' " *State v. Belcher*, 269 Kan. 2, 8, 4 P.3d 1137 (2000) (quoting *State v. Horn*, 20 Kan. App. 2d 689, Syl. ¶ 1, 892 P.2d 513, *rev. denied* 257 Kan. 1094 [1995]). Simply put, according to Gonzales' reasoning, if the defendant's age is an essential element of the crime but is not addressed in the charging document, then the State fails to charge the defendant with the aggravated sexual offense and, consequently, the defendant cannot be sentenced for any offense.

The elements of aggravated indecent liberties with a child are contained in K.S.A. 21-3504, which provides in part:

"(a) Aggravated indecent liberties with a child is:

. . . .

"(3) engaging in any of the following acts with a child who is under 14 years of age:

"(A) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender, or both;

. . . .

"(c) Except as provided further, aggravated indecent liberties with a child as described in subsections (a)(1) and (a)(3) is a severity level 3, person felony. . . . When the offender is 18 years of age or older, aggravated indecent liberties with a child as described in subsection (a)(3) is an off-grid person felony."

The sentences for off-grid crimes are set out in K.S.A. 21-4706 and provides in part:

"(d) As identified in K.S.A. . . . . 21-3504 . . . and amendments thereto, if the offender is 18 years of age or older and the victim is under 14 years of age, such violations are off-grid crimes for the purposes of sentencing. Except as provided in K.S.A. 21-4642, and amendments thereto, the sentence shall be imprisonment for life pursuant to K.S.A. 21-4643, and amendments thereto."

This court recently upheld the validity of a charging document—and the district court's jurisdiction—under nearly identical facts in *State v. Gracey*, 288 Kan. 252. In *Gracey*, the defendant argued the charging document was defective for failing to allege he was 18 years of age or older when he committed the crime of aggravated indecent liberties with a child under the age of 14. We rejected his argument.

In reaching this conclusion, we noted that the test used to evaluate the sufficiency of the charging document depends upon when the issue was first raised. Where, as in this case, the charging document is challenged for the first time on appeal, the defendant must show that the alleged defect either: (1) prejudiced the defendant's preparation of a defense; (2) impaired the defendant's ability to plead the conviction in any subsequent prosecution; or (3) limited the defendant's substantial rights to a fair trial. *Gracey*, 288 Kan. at 254; see *State v. Hall*, 246 Kan. 728, 761, 793 P.2d 737 (1990), *overruled in part on other grounds by Ferguson v. State*, 276 Kan. 428, 78 P.3d 40 (2003); see also *State v. McElroy*, 281 Kan. 256, 261, 130 P.3d 100 (2006) (applying the post-*Hall* analysis); *State v. Shirley*, 277 Kan. 659, 661, 89 P.3d 649 (2004) (same).

Applying this analysis in *Gracey*, we determined the charging deficiency, if any, did not invalidate Gracey's conviction. By listing Gracey's date of birth in the caption, the document averred that he was over the age of 18 and it also stated at the bottom that the charge was for an off-grid felony. "The validity of a charging instrument is to be tested by reading the document in its entirety, and the elements of the offense may be gleaned from the document as a whole." *Gracey*, 288 Kan. at 256 (citing *McElroy*, 281 Kan. 256, Syl. ¶ 3). Without stating specifically whether the defendant's age was an element of the crime, but implying it to be so, *Gracey* determined the document specified all the "elements" of aggravated indecent liberties with a child, and under the circumstances, Gracey was adequately informed of both the crime charged and the penalty. Further, Gracey did not contend that the preparation of his defense or his rights to a fair trial were impaired, and the conviction was not shown to affect any subsequent prosecution.

Based on our limited standard of review, we held the sentencing court did not err in applying K.S.A. 21-4643.

Similar to the situation in *Gracey*, the complaint against Gonzales listed his date of birth, stated the charge was for an off-grid person felony, and otherwise specifically listed the elements of aggravated indecent liberties with a child under the age of 14. Gonzales does not contend that the preparation of his defense or his rights to a fair trial were impaired. Nor has Gonzales shown that his conviction for aggravated indecent liberties with a child under the age of 14 affected any subsequent prosecution. Consequently, to the extent Gonzales alleges a deficiency in the complaint for the first time on appeal, *Gracey* leads us to conclude that, under the circumstances, Gonzales was adequately informed of both the crime charged and the penalty. Thus, based on the facts and our limited standard of review, the failure to specifically allege in the complaint that Gonzales was 18 years of age or older did not invalidate his conviction.

## C. Reversal of Conviction

*Gracey* does not dispose entirely of Gonzales' appeal, however. Gonzales also contends that omitting the defendant's age—an essential element—from the charging document and from the jury instructions requires reversal of his conviction for aggravated indecent liberties with a child under the age of 14. This argument has no merit in light of the recent case of *Bello*, 289 Kan. at 195.

Like Gonzales, Bello was convicted of aggravated indecent liberties with a child under the age of 14 and aggravated criminal sodomy. With regard to both of Bello's crimes of conviction, because he was 18 years of age or older and the victim was under 14 years of age, the crimes were off-grid severity level crimes under K.S.A. 21-4706. Asserting that the defendant's age is an essential element and making the same arguments that Gonzales now brings before this court, Bello characterized K.S.A. 2006 Supp. 21-4643 as a statute which establishes a separate, aggravated form of the enumerated crimes. This court rejected the idea that separate crimes were created by the statute.

Instead, we observed that each of the statutes defining Bello's crimes—aggravated criminal sodomy and aggravated indecent liberties with a child—"sets forth two separate levels of the offense which can apply to the act which Bello committed: one a KSGA nondrug grid box offense, and the other an off-grid offense." *Bello*, 289 Kan. at 198. We explained that "[t]he determination of which offense applies turns on whether the offender was age 18 or older when committing the criminal act." *Bello*, 289 Kan. at 198.

We further noted that the crime-defining statutes in *Bello* are comparable in structure to the theft statute, K.S.A. 21-3701, which describes varying levels of offenses based upon the additional fact of the stolen property's value. *Bello*, 289 Kan. at 198; see also, *e.g.*, *State v. Piland*, 217 Kan. 689, Syl. ¶ 3, 538 P.2d 666 (1975) (where value of stolen property is at issue, trial court should instruct the jury regarding the element of value and require a jury finding as to value).

Hence, although K.S.A. 21-4643 *reiterates* the age factor which elevates the sentence for aggravated indecent liberties with a child to a hard 25 life sentence, the fact remains that the severity-enhancing factor is initially identified in K.S.A. 21-3504, the statute defining the elements of the crime. *Bello*, 289 Kan. at 198. In other words, as applicable to the present case, the defendant's age is an element of the crime of aggravated indecent liberties with a child when the crime is charged as an off-grid severity level offense. Omitting the defendant's age from a complaint or from jury instructions does not eliminate the existence of the crime of aggravated indecent liberties with a child or invalidate a criminal conviction for that offense—the crime severity level is merely characterized as the applicable KSGA severity level stated in K.S.A. 21-3504(c) rather than as an off-grid offense. Gonzales' conviction of aggravated indecent liberties with a child is valid.

## D. *Apprendi*

Nevertheless, there remains the question of whether the failure to instruct the jury on the age of the defendant means that the aggravated sentence is invalid. Keeping in mind the holding that a defendant is validly convicted of aggravated indecent liberties with

a child, the *Bello* court found significant the United States Supreme Court's rationale in *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), in determining whether an enhanced sentence was valid. In *Apprendi*, the Supreme Court clarified that merely because a state legislature places a sentence enhancing factor within the sentencing provisions of the criminal code does not mean that the factor is not an essential element of the offense. 530 U.S. at 495. In *Bello*, relying on *Apprendi*, we stated: "If a 'sentencing factor' is used to increase a defendant's sentence beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict." *Bello*, 289 Kan. at 199 (citing 530 U.S. at 494 n.19).

We observed that at Bello's trial, the State failed to present evidence of his age, and the trial court did not instruct the jury to make a finding that Bello was age 18 years or older. Therefore, based on the facts reflected in the jury verdict, without the sentencing judge finding the additional fact of Bello's age, he could only receive the statutory maximum sentences found in the KSGA nondrug offense sentencing grid applicable to his crimes of conviction. We reiterated that to increase the penalty to an off-grid penalty, "the fact that Bello was age 18 years or older at the time he committed the offense needed to have been submitted to the jury and proved beyond a reasonable doubt." *Bello*, 289 Kan. at 199-200 (citing *State v. Gould*, 271 Kan. 394, Syl. ¶ 2, 23 P.3d 801 [2001]).

Likewise, in Gonzales' case, the State failed to present evidence of his age at trial, and the jury was not instructed to make a finding regarding Gonzales' age. Under the reasoning in *Bello*, when a defendant is charged with an off-grid severity level offense of aggravated indecent liberties with a child, the element of the defendant's age must first be submitted to the jury and proved beyond a reasonable doubt in order for a defendant to be sentenced for an off-grid severity level offense under K.S.A. 21-4643. Accordingly, the sentence imposed on Gonzales under K.S.A. 21-4623 is vacated and the case is remanded for resentencing on Count II as a felony on the KSGA nondrug sentencing grid.

In light of our holding, we decline to address Gonzales' alternative arguments regarding a disproportionate/cruel or unusual sentence and the district court's denial of his request for a downward departure sentence.

### III. Criminal History

Finally, Gonzales contends that the district court violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution under *Apprendi*, 530 U.S. 466, when it sentenced him to an increased sentence, based upon his criminal history, without requiring that the State prove his criminal history to a jury beyond a reasonable doubt. Gonzales concedes that this issue is controlled by our decision in *State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002). And this court has continued to consistently follow *Ivory*. See, *e.g.*, *State v. Riojas*, 288 Kan. 379, 388, 204 P.3d 578 (2009); *State v. Farmer*, 285 Kan. 541, 555, 175 P.3d 221 (2008).

Gonzales provides no compelling reason to revisit our current holding on the constitutionality of calculating criminal history scores without submitting them to a jury.

We affirm in part, reverse in part, vacate the sentence, and remand to the district court with directions.