No. 100,359

STATE OF KANSAS, *Appellee*, v. MERARDO GARZA, JR., *Appellant*.

(236 P.3d 501)

Opinion filed July 30, 2010.

*Michelle A. Davis*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Lesley A. Isherwood*, assistant district attorney, argued the cause, and *Nola Tedesco Foulston*, district attorney, and *Steve Six*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: Merardo Garza, Jr., appeals his sentence and convictions of aggravated indecent liberties with a child pursuant to

K.S.A. 21-3504(a)(3)(A) and rape of a child under 14 years of age pursuant to K.S.A. 21-3502(a)(2). He was sentenced to life in prison with a mandatory minimum sentence of 25 years under K.S.A. 21-4643, commonly known as Jessica's Law. This court has jurisdiction under K.S.A. 22-3601(b)(1) (off-grid crime; life sentence).

The following questions are raised on appeal: (1) Was Garza entitled to new counsel before trial? (2) Did the district court exclude relevant evidence? (3) Was the charging document insufficient to sentence Garza to an off-grid crime because it did not list his age as an element of the crime? (4) Should Garza's sentence be vacated and remanded for resentencing under *State v. Bello*, 289 Kan. 191, 195-200, 211 P.3d 139 (2009), and its progeny? (5) Did Garza preserve his claim that the off-grid sentence amounts to a cruel and unusual punishment? (6) Is the departure provision in K.S.A. 21-4643(d) unconstitutional because it allows arbitrary and capricious decision making? and (7) Should Garza's conviction of aggravated indecent liberties with a child be reversed and vacated because he was charged in the alternative?

We affirm Garza's conviction of rape of a child under 14 years of age. We reverse and vacate his conviction of aggravated indecent liberties with a child because this offense was charged in the alternative. Our case law holds a defendant cannot be convicted of both offenses when the crimes are charged in the alternative. *State v. Dixon*, 252 Kan. 39, 49, 843 P.2d 182 (1992). But Garza's sentence is affirmed nonetheless because the district court did not actually sentence him for the aggravated indecent liberties conviction. Other issues raised are addressed below and resolved against Garza.

## FACTUAL AND PROCEDURAL BACKGROUND

Garza and his wife, Amy, have four children, including the child victim, M.G. Garza also has two stepdaughters, X.S., who was 13 years old, and A.C., who was 11 years old. They lived with Garza. The incident giving rise to this case occurred on a Saturday evening after M.G. and other family members returned home from visiting relatives after midnight.

M.G. testified she lay down on the living room floor to go to sleep. Garza was lying on the couch. M.G. testified Garza lay beside her, "put his fingers in [her] vagina and like wiggled them." She took his hand out of her pants two times, and then he rubbed her bottom on the outside of her pants. The next day, M.G. told her stepsisters. Then, she told her mother. Her mother took her to the hospital for an evaluation, and the incident was reported to police.

Garza's defense theory was that Amy forced M.G. to make a false accusation. He relied on testimony from one of his other daughters, who testified Garza and Amy had previously fought and that Amy went to jail. The daughter also testified Amy had said she would lie to put Garza in jail. Garza testified he caught Amy communicating with other men on the Internet. He also testified M.G. was supposed to go to Kansas City with her uncle the night of the incident, but Amy did not let her go.

The information charged Garza with aggravated indecent liberties with a child under K.S.A. 21-3504(a)(3)(A) and (c) and, in the alternative, rape under K.S.A. 21-3502(a)(2) and (c). Both were listed as off-grid person felonies, and Garza's date of birth was listed as 1969. Neither charge included Garza's age as an element of the offense. At trial, the investigating detective testified Garza was over 18 years of age. The district court issued the elements instruction from PIK Crim. 3d 57.06 and PIK Crim. 3d 57.01. The instructions did not include Garza's age as an element of the offenses, and the jury did not make a finding regarding his age. He was convicted of both offenses.

Garza filed a downward departure motion on his own behalf, and his counsel also filed a motion seeking a downward departure. Garza's counsel's motion stated: "This is a 'Jessica's Law' case and the presumptive sentence is Life with parole eligibility in 25 years. The defendant would state that such a sentence would amount to cruel and unusual punishment. The Court has the option to depart to the sentencing guidelines and impose a guideline sentence." ·

At the hearing on these motions, Garza argued a departure was appropriate because a life sentence exceeds the degree of harm committed in this case. He also argued he was entitled to a departure sentence because his criminal history only includes one mis-

demeanor conviction. Finally, Garza cited the sexual offender evaluation, which determined Garza had a low risk of reoffending and that sexual offender treatment would be appropriate. The district court held it was required to find substantial and compelling reasons to depart. After addressing each claim, it held departure was not warranted. Garza filed a timely appeal.

While his appeal was pending, Garza filed a letter of additional authority under Supreme Court Rule 6.09(b) (2009 Kan. Ct. R. Annot. 47), citing this court's recent holdings that the defendant's age is an element of the offense that must be determined by the jury to sentence for an off-grid offense. See *State v. Morningstar*, 289 Kan. 488, Syl. ¶¶ 2-3, 213 P.3d 1045 (2009); *State v. Gonzales*, 289 Kan. 351, Syl. ¶¶ 10-11, 212 P.3d 215 (2009); *Bello*, 289 Kan. 191, Syl. ¶¶ 3-4.

*Issue 1: Entitlement to New Counsel*

Before voir dire, Garza requested substitute counsel. The district court denied the motion finding Garza had not presented sufficient grounds to appoint new counsel. On appeal, Garza argues he established "justifiable dissatisfaction" with his appointed counsel and he was entitled to have new counsel appointed. He argues his trial counsel was not prepared, citing concerns about the attorney's failure to provide a preliminary transcript and to secure witness testimony. The State argues the district court did not err by refusing to appoint new counsel because Garza did not establish justifiable dissatisfaction with his trial counsel.

*Standard of Review*

Appellate courts review the district court's refusal to appoint substitute trial counsel for an abuse of discretion. "Judicial discretion is abused when the district court's action is arbitrary, fanciful, or unreasonable." *State v. McGee*, 280 Kan. 890, 894, 126 P.3d 1110 (2006). The test is whether any reasonable person would take the view adopted by the district court. 280 Kan. at 894.

Before substitute counsel is appointed, a defendant must establish "justifiable dissatisfaction" with his or her current counsel. This may be established by showing a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between

the defendant and appointed counsel. 280 Kan. at 894. Ultimately, a district court is justified in denying a request for new counsel if there is a reasonable basis for believing the attorney-client relationship has not deteriorated to a point that appointed counsel could not give effective aid in the presentation of the client's defense. *State v. Bryant*, 285 Kan. 970, 986, 179 P.3d 1122 (2008). Garza argues there was an irreconcilable conflict.

*Analysis*

Garza requested new counsel citing the following complaints: (1) Counsel failed to provide him with a copy of the preliminary hearing transcript; (2) counsel failed to contact witnesses; (3) counsel lied; and (4) Garza did not feel counsel was prepared to proceed.

Regarding the preliminary hearing transcript, counsel stated he was unsure if a preliminary transcript had been ordered, but he would check and provide Garza a copy if one was available. The district court indicated counsel should look into getting the transcript but noted the failure to provide a transcript was not grounds for appointing new counsel because defendants do not have a constitutional right to a transcript. Counsel subsequently asked for a continuance to check the clerk's office, which was granted. The proceedings resumed without mentioning whether a transcript was provided, but the record indicates the preliminary hearing transcript was not prepared until after trial.

We must decide whether the failure to have the preliminary hearing transcript prepared for use at trial demonstrates an irreconcilable conflict existed between Garza and his attorney. We find it does not. Defendants are not automatically entitled to preliminary hearing transcripts. Indigent defendants are only entitled to transcripts required for an effective defense. Two factors are used to determine whether a transcript is required: (1) the necessity of the transcript for the defendant and (2) the availability of alternative devices. *State v. Ruebke*, 240 Kan. 493, 497, 731 P.2d 842, *cert. denied* 483 U.S. 1024 (1987).

Garza's wife and M.G. both testified at the preliminary hearing. A review of the record demonstrates they were thoroughly cross-

examined during trial. Garza's counsel was present at the preliminary hearing, so he was personally aware of these witnesses' prior testimony at the preliminary hearing. As such, the district court correctly found the failure to request a transcript did not demonstrate an irreconcilable conflict.

The complaints regarding counsel's failure to contact witnesses and Garza's accusation that his counsel lied are actually the same issue. Garza did not believe one witness would be willing to appear in court because the witness had an outstanding warrant. Garza believed counsel lied when counsel told him the witness had agreed to testify. Counsel stated he became aware of the witness the previous evening, spoke with him, and the witness agreed to testify. The attorney said he was meeting with the witness that afternoon. Counsel also acknowledged Garza may have had valid reservations about the witness because of the outstanding warrants, but he intended to follow up. Finally, the attorney said he intended to issue a subpoena for the witness if he kept the scheduled appointment and had meaningful testimony.

The district court held it was not counsel's fault the witness was not subpoenaed earlier because the information had just come to light and a continuance would be the more appropriate remedy if the witness could not be subpoenaed. A reasonable person would agree with the district court's denial on this issue. Garza's argument anticipated problems that had not occurred, and the better remedy would be to seek a continuance if the subpoena could not be served. At trial, no witnesses were called for the defense, but the record is silent as to why. No additional argument was made on appeal about the failure to call any defense witnesses.

As to Garza's final point raised at trial—that he did not feel counsel was prepared to proceed—Garza's counsel said he was prepared. The district court found counsel had not done anything that prevented him from being prepared for trial. We agree.

For the first time on appeal Garza argues he was entitled to new counsel because Garza stated he wanted to seek a continuance before voir dire to subpoena the witness but his counsel did not file the motion. Generally, new legal theories cannot be raised for the first time on appeal. *State v. Kirtdoll*, 281 Kan. 1138, 1149, 136

P.3d 417 (2006). Garza does not assert an exception applies. The district court could not have erred by refusing to appoint new counsel when the theory was not presented.

But even if this issue were properly raised, it would fail because counsel had time to seek a continuance after the scheduled meeting with the witness if he could not issue the subpoena to secure the witness' presence at trial. This circumstance does not signal an irreconcilable conflict existed between Garza and his attorney.

*Issue 2: Exclusion of Evidence*

Garza next argues the district court twice improperly excluded relevant evidence. The State disputes this. On review, we find only one instance in which the district court actually excluded evidence as claimed, and that evidence was irrelevant.

*Standard of Review*

The first step when reviewing the exclusion of evidence is to determine whether the evidence is relevant. K.S.A. 60-401(b) defines relevant evidence as "evidence having any tendency in reason to prove any material fact." See *State v. Henson*, 287 Kan. 574, 578, 197 P.3d 456 (2008). This definition encompasses two components: whether the evidence is probative and whether it is material. 287 Kan. at 578; see *State v. Dixon*, 289 Kan. 46, 69-70, 209 P.3d 675 (2009). Probative evidence is evidence that " 'furnishes, establishes or contributes toward proof.' " *Klose v. Wood Valley Racquet Club, Inc.*, 267 Kan. 164, 167, 975 P.2d 1218 (1999). It is reviewed under an abuse of discretion standard. *Dixon*, 289 Kan. at 69. Material evidence goes to a fact at issue that is significant under the substantive law of the case. *State v. Reid*, 286 Kan. 494, 505, 186 P.3d 713 (2008). The determination whether evidence is material is reviewed under a de novo standard. *Dixon*, 289 Kan. at 69.

Once relevance is established, the evidentiary rules governing the admission or exclusion of evidence are applied as a matter of law or in the exercise of judicial discretion, depending on the applicable rule. But if the adequacy of the legal basis is questioned, appellate courts review this issue de novo. 289 Kan. at 70; *State v. Gunby*, 282 Kan. 39, 47-48, 144 P.3d 647 (2006).

*Analysis*

First, Garza sought to admit evidence that Amy (M.G.'s mother and Garza's wife) had an Internet relationship with another man, who moved in after Garza's arrest, and Amy left the man alone with the children. The district court allowed testimony that a man moved into the house after Garza's arrest. The State objected before the next question. During a discussion at the bench, Garza's counsel stated he intended to ask whether Amy left the children alone with this man to show she was not concerned for her children's safety. The following exchange occurred:

"THE COURT: Now that's getting way out of field on it because that doesn't have anything to do with the motive for her having her child falsify the aggravated situation.

"[THE STATE]: Before he goes into anything like this in his case in chief, I want to have a hearing outside the presence of the jury because I don't think it's relevant.

"[GARZA'S COUNSEL]: I won't go there.

"THE COURT: Okay."

Garza's counsel returned and began questioning Amy on another issue. The transcript demonstrates only that the trial court questioned relevance, but it did not rule on the objection. Garza voluntarily declined to pursue the questioning further, presumably to avoid submitting additional testimony to establish relevance. Therefore, Garza's challenge to this issue on appeal is misplaced.

Second, Garza challenges the exclusion of testimony from the victim's sister, A.C., regarding whether Garza once became upset "with you and the siblings and even Amy looking at inappropriate websites." Garza argued it was relevant to show how the household was run, would demonstrate Garza was firm on inappropriate behaviors, and was admissible because it was not a specific instance of conduct. The State objected, arguing it was irrelevant and inadmissible as a specific instance of conduct described to impeach. The State argued Garza had already established how the household was run because one of Garza's stepdaughters had just testified she thought her dad would ground them for looking at inappropriate material. The district court sustained the objection.

Before addressing the testimony's relevance, it should be noted Garza failed to proffer how A.C. would have testified. The question itself does not clearly indicate the substance of the evidence as required by K.S.A. 60-405, which states:

"A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless it appears of record that the proponent of the evidence either made known the substance of the evidence in a form and by method approved by the judge, or indicated the substance of the expected evidence by questions indicating the desired answers."

Counsel's question contained a vague reference to inappropriate websites and suggested the websites were sexually explicit. Garza's appellate counsel now argues for the first time on appeal that this information was relevant to establish the children's knowledge of sexual material. But this assumes evidence not in the record because counsel did not establish what he deemed an "inappropriate website" for an 11-year-old child, and it is unclear whether the victim, M.G., was involved in the incident allegedly involving her sister. Garza is not entitled to claim error because he did not make a proffer. See *State v. Coleman*, 253 Kan. 335, 344, 856 P.2d 121 (1993) ("It is well established that a party may not assert error based on the erroneous exclusion of evidence in the absence of a proffer of that excluded evidence.").

But even assuming the term "inappropriate websites" establishes A.C., her siblings, and Amy viewed pornography and Garza subsequently disciplined the children, this subject matter does not support Garza's case. His defense theory was that M.G. made a false allegation because Amy encouraged it to get Garza out of the house without losing custody of the children. Evidence the children viewed pornography does not establish or contribute toward proof that Garza's testimony was more credible than M.G.'s or Amy's. In addition, while evidence suggesting Garza was the only parent who disciplined the children for viewing inappropriate websites helps establish Garza was firm on inappropriate behaviors, as he claimed, the evidence was not material to a fact at issue. Garza argued at trial that M.G. lied because Amy made her. The district court was correct to exclude this evidence.

## Issue 3: Sufficiency of the Charging Document

Garza next argues the district court lacked jurisdiction to sentence him under K.S.A. 21-4643 because the charging instrument did not allege he was 18 years of age or older. He argues he should be sentenced under the guidelines because of this defect. This issue was raised for the first time on appeal, and it fails under this court's analysis in *Gonzales*, 289 Kan. 351, and *State v. Gracey*, 288 Kan. 252, 200 P.3d 1275 (2009).

Whether a charging document sufficiently confers subject matter jurisdiction is a question of law subject to unlimited review. The test governing the sufficiency of the charging document depends upon when the issue is raised. If it is challenged for the first time on appeal, the defendant must show the alleged defect either: (1) prejudiced the defendant's preparation of a defense; (2) impaired the defendant's ability to plead the conviction in any subsequent prosecution; or (3) limited the defendant's substantial rights to a fair trial. *Gracey*, 288 Kan. at 254.

In *Gonzales*, 289 Kan. at 368-69, and *Gracey*, 288 Kan. at 256-57, this court upheld the charging document's validity under identical facts to those presented here. In all three cases, the information's caption contained the defendant's date of birth and the document stated it was for an off-grid felony. Under these circumstances and in light of the standard of review, this court held the defendant was adequately informed about the crime charged and the penalty. *Gonzales*, 289 Kan. at 369; *Gracey*, 288 Kan. at 257. We believe the same is true in this appeal. The failure to allege Garza was 18 years of age or older does not invalidate his conviction.

## Issue 4: Proof of defendant's age under Jessica's Law

As mentioned above, in *Morningstar*, *Gonzales*, and *State v. Bello*, 289 Kan. 191, 211 P.3d 139 (2009), this court held the defendant's age had to be submitted to the jury before a defendant could be sentenced to an off-grid offense under K.S.A. 21-4643. Garza was convicted of rape, and he was sentenced to an off-grid offense under K.S.A. 21-3502 and K.S.A. 21-4643. The State concedes Garza's age was not submitted to or determined by the jury.

But unlike *Morningstar*, *Gonzales*, and *Bello*, there was evidence regarding Garza's age presented to the jury. In this case, a detective testified Garza was older than 18 years of age. Nevertheless, Garza argues his sentence violates *Apprendi v. New Jersey*, 530 U.S. 466, 490, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), because his age— or the determination of whether he was 18 years of age or older— was an element of both aggravated indecent liberties with a child and rape when sentenced to the off-grid crimes under K.S.A. 21-4643. *Bello* and its progeny rely on *Apprendi* and the subsequent cases following *Apprendi* for their holdings.

Garza also argues the harmless error analysis recognized in *State v. Daniels*, 278 Kan. 53, 91 P.3d 1147, *cert. denied* 543 U.S. 982 (2004), does not apply because of the importance assigned to the right to have a jury determine each element of the offense under *Apprendi*. The State argues Garza's age is not an element of the offense and it was not required to be submitted to the jury. The State does not address whether the harmless error analysis in *Daniels* applies.

According to *Daniels*, the failure to instruct a jury on an essential element is harmless error if " 'a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error.' " 278 Kan. at 62. This analysis is based upon *Neder v. United States*, 527 U.S. 1, 17-19, 144 L. Ed. 2d 35, 119 S. Ct. 1827 (1999).

In *State v. Reyna*, 290 Kan. 666, 234 P.3d 761 (2010), we recently considered whether the failure to instruct the jury on this element of the crime was harmless when the trial record actually contained uncontested evidence about the defendant's age that would have permitted the jury to make the appropriate finding, if properly instructed to do so. In *Reyna*, we concluded that a harmless error analysis was applicable. 290 Kan. at 682.

The *Reyna* court analyzed the issue in light of this court's decisions in *Daniels*, 278 Kan. at 57, and *State v. Davis*, 275 Kan. 107, 115, 61 P.3d 701 (2003), as well as *Apprendi* and *Washington v. Recuenco*, 548 U.S. 212, 165 L. Ed. 2d 466, 126 S. Ct. 2546 (2006). In *Recuenco*, the Court concluded that "[f]ailure to submit a sen-

tencing factor to the jury, like failure to submit an element to the jury, is not structural error." 548 U.S. at 222. After reviewing these decisions, our court in *Reyna* explained its holding as follows:

"*Daniels* stands for the proposition that this court will apply the harmless error analysis to the omission of an element from the instructions to the jury when a review of the evidence leads to the conclusion beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error. And *Recuenco* stands for the proposition that characterizing the omission as an *Apprendi*-type error, *i.e.*, judicial factfinding of the omitted element when that element enhances the maximum applicable sentence, does not change that analysis." *Reyna*, 290 Kan. at 681.

In Garza's case, there was testimony Garza was more than 18 years of age. There was no dispute about this as the trial progressed. Therefore, there was uncontested evidence before the jury on which it could have based a finding about Garza's age at the time of the offense, if properly instructed to do so. This evidence distinguishes Garza's case from *Morningstar*, *Gonzales*, and *Bello*. As in *Reyna*, we are convinced the *Apprendi*-type error that occurred in Garza's case, *i.e.*, when the trial court made the age determination rather than having the jury make the actual finding, was harmless.

*Issue 5: Cruel and Unusual Punishment Argument*

Garza argues his life sentence violates the constitutional prohibition against cruel and unusual punishment under the Eight Amendment to the United States Constitution and § 9 of the Kansas Constitution Bill of Rights. He argues this issue was preserved for appeal because he stated the sentence would "amount to cruel and unusual punishment" in his departure motion. Finally, Garza cites the applicable analysis in *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978), and argues the test for disproportionality is satisfied because the punishment for this offense is greater than the punishment for more serious crimes.

The State argues this issue should not be reached because it is raised for the first time on appeal, citing *State v. Ortega-Cadelan*, 287 Kan. 157, Syl. ¶ 2, 194 P.3d 1195 (2008). The State also argues the first prong for the *Freeman* analysis is factually driven and must

be raised before the district court. In the alternative, the State argues the sentence is not unconstitutional.

In previous cases, this court declined to review this issue for the first time on appeal. *State v. Easterling*, 289 Kan. 470, 485-87, 213 P.3d 418 (2009); *State v. Spotts*, 288 Kan. 650, 652-54, 206 P.3d 510 (2009); *State v. Thomas*, 288 Kan. 157, 160-61, 199 P.3d 1265 (2009); *Ortega-Cadelan*, 287 Kan. at 161. These cases used the three-part test established in *Freeman* to determine whether a sentence is a cruel and unusual punishment. This test provides:

"(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;

"(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and

"(3) A comparison of the penalty with punishments in other jurisdictions for the same offense." 223 Kan. at 367.

Since these factors include both legal and factual inquiries and the district court did not make these required findings, this court declined to address the issue. *Easterling*, 289 Kan. at 487; *Thomas*, 288 Kan. at 161. Garza argues this barrier should not apply because he raised the issue in his departure motion. But this argument has limited merit under *State v. Seward*, 289 Kan. 715, 721, 217 P.3d 443 (2009), in which this court remanded the issue for the district court to make the necessary findings.

In *Seward*, the defendant mentioned this claim during plea negotiations, included it in his written downward departure motion, and reiterated the claim on the record at the sentencing hearing. This court held the issue was sufficiently raised before the district court. It then addressed whether the failure to move for additional findings under Supreme Court Rule 165 barred the claim. See Rule 165 (2009 Kan. Ct. R. Annot. 239). The court concluded it was not barred. This court remanded the issue to the district court to make the required factual and legal determinations. 289 Kan. at 720-21. But the *Seward* court cautioned:

"We emphasize that we believe this case to be exceptional. In the future, a defendant who wishes to appeal on the basis of a constitutional challenge to a sentencing statute must ensure the findings and conclusions by the district judge are sufficient to support appellate argument, by filing of a motion invoking the judge's duty under Rule 165, if necessary." 289 Kan. at 721.

Garza's claim is distinguishable from *Seward* because he failed to sufficiently raise the issue before the district court. In his departure motion, Garza stated a life sentence would constitute a cruel and unusual punishment. But he did not cite any authority, address the three-prong *Freeman* test, or argue this point during the departure hearing. In contrast to the defendant in *Seward*, there is no evidence of an effort to preserve this issue for appeal. Issues raised in passing that are not supported by argument or cited authority are deemed waived. *Morningstar*, 289 Kan. 488, Syl. ¶ 4.

### Issue 6: Arbitrary and Capricious Argument

Garza next argues that K.S.A. 21-4643(d), the departure statute contained in Jessica's Law, violates his due process rights under the Fourteenth Amendment to the United States Constitution and § 18 of the Kansas Constitution Bill of Rights because it allows for arbitrary and discriminatory decision making.

Principally, Garza argues the departure statute is unconstitutional because it allows arbitrary decision making. The State treats this as a challenge to the district court's determination that substantial and compelling reasons did not exist to justify departure. This court recently addressed a defendant's due process rights at sentencing, and a part of our analysis determined that the sentencing court's discretion, by itself, does not violate due process if the discretion is exercised within the requirements of procedural due process. *Easterling*, 289 Kan. at 482.

In *Easterling*, the defendant argued his due process rights were violated because the sentencing judge based his sentence, in part, on information contained in an arrest report that the defendant could not dispute and the State did not prove. This court recognized a defendant is entitled to due process at sentencing. 289 Kan. at 476. It also recognized a sentencing court may consider any

circumstance providing a more complete and accurate picture of the defendant's background, history, or behavior, and that the use of such information does not by itself violate a defendant's due process rights. 289 Kan. at 481. But this court added that due process required a court to assure itself the information was reliable, accurate, and trustworthy, and the defendant must have an opportunity to rebut the evidence. 289 Kan. at 482.

Garza does not argue the judge violated his due process rights while using his discretion. Instead, he argues the discretion itself violates due process. Under the analysis in *Easterling*, this argument lacks merit.

*Issue 7: Conviction of the Alternative Charge*

Finally, Garza argues the district court erred by entering convictions for both aggravated indecent liberties with a child and rape of a child under 14 years of age because the information charged these counts in the alternative. Garza contends he is prejudiced by this error because the aggravated indecent liberties conviction appears on his criminal record. The State argues the conviction does not have to be reversed and vacated because these charges are not multiplicitous.

In *State v. Dixon*, 252 Kan. 39, 49, 843 P.2d 182 (1992), this court held that "[a] defendant charged with more than one offense in a multiple-count complaint may be convicted of more than one offense. In contrast where, as here, the defendant has been charged in the alternative, he may be convicted of only one offense." See *State v. Blanchette*, 35 Kan. App. 2d 686, 704, 134 P.3d 19, *rev. denied* 282 Kan. 792 (2006), *cert. denied* 549 U.S. 1229 (2007). The State attempts to distinguish *Dixon* by arguing it only applies when the charges are multiplicitous. But *Dixon* goes on to find that the jury does not need to deliberate on the lesser alternative charge if the defendant is convicted of the greater offense and the charges are multiplicitous. 252 Kan. at 49. Rather than supporting the State's argument, this cuts against it because it reiterates that a defendant can only be convicted of one of the alternative crimes when charged in the alternative.

*Dixon* clearly holds that a defendant cannot be convicted of both offenses when the crimes are charged in the alternative. The district court appeared to partially understand this since it did not sentence Garza for aggravated indecent liberties with a child. But the aggravated indecent liberties conviction must be reversed.

Affirmed in part and reversed in part.

\* \* \*

JOHNSON, J., dissenting: I respectfully disagree with the majority's decision to affirm Garza's sentence for the off-grid version of rape under K.S.A. 21-3502(a)(2). I believe Garza should have been sentenced for the crime with which he was charged and of which he was convicted by the jury, *i.e.*, the severity level 1 version of the offense.

I discussed my reasons for dissenting on this issue in *State v. Reyna*, 290 Kan. 666, 690, 234 P.3d 761 (2010), upon which the majority in this case relies. I will not replow that ground here. However, the majority's opinion in this case has sparked some additional thoughts which I will share.

In discussing Garza's claim that the district court erroneously excluded relevant evidence, the majority notes that the materiality component of relevance requires that the evidence be material to a fact at issue in the case. If the defendant's age was not identified as an element of the crime in either the charging document or the jury instructions, what made the defendant's age a fact at issue during the guilt phase of the trial? I would submit that where the jury will not be asked to find that the defendant is age 18 years or older, that fact is not at issue during the trial and, therefore, is not material evidence. Accordingly, Garza received an enhanced sentence based upon evidence which was irrelevant when it was introduced.

Apparently, the prosecutors in the *State v. Morningstar*, 289 Kan. 488, 213 P.3d 1045 (2009), *State v. Gonzales*, 289 Kan. 351, 212 P.3d 215 (2009), and *State v. Bello*, 289 Kan. 191, 211 P.3d 139 (2009), cases did not believe the defendants' respective ages were material evidence, because no evidence of age was introduced at their trials. In fact, the evidence of Reyna's age came not from

the State but from Reyna's direct testimony. One can only surmise, but it would not be totally unfair to presume, that defense counsel did not believe that the client's age was a fact at issue in that trial when asking Reyna to recite his age. The result is that Reyna and Garza received hard 25 life sentences, whereas Morningstar, Gonzales, and Bello did not, based solely upon the fortuitous circumstance that immaterial evidence just happened to be placed in evidence at trial. One might ponder whether the framers of our federal and state Constitutions envisioned such a circumstance as comporting with due process of law and fundamental fairness. I think not.