No. 100,402

STATE OF KANSAS, *Appellee*, v. JOSE JUAN HUERTA-ALVAREZ, *Appellant*.

(243 P.3d 326)

248

Opinion
filed October 1, 2010.

*Heather Cessna*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Lesley A. Isherwood*, assistant district attorney, argued the cause, and *Boyd K. Isherwood*, assistant district attorney, *Nola Tedesco Foulston*, district attorney, and *Steve Six*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: Jose Juan Huerta-Alvarez appeals from two convictions of aggravated indecent liberties with a child contrary to K.S.A. 21-3504(a)(3)(A). The dates of the offenses fall on both sides of the date upon which K.S.A. 2006 Supp. 21-4643, known as Jessica's Law, became effective; consequently, he was sentenced to 61 months, the high end of the Kansas sentencing guidelines grid box, on one count, and to life with a hard 25 under K.S.A. 2006 Supp. 21-4643 on the other count. He raises several issues on appeal. Our jurisdiction is under K.S.A. 22-3601(b)(1).

## FACTS

On December 16, 2006, Wichita police officer Eric Noack was dispatched to 1017 S. Woodlawn on a check the welfare call. When he arrived he found 13-year-old B.N., who was locked out of her residence and who told him she did not know where her mother was. According to Officer Noack, no other adults were present when he arrived. Eventually, B.N.'s grandparents, mother, and uncle all arrived.

Officer Noack noticed that B.N.'s mother kept trying to keep B.N. close to her and talk to her, but B.N. appeared uncomfortable with her mother and did not seem to want to talk to her. B.N. had earlier told the officer that the day before her mother had told her to pack her things and get out because B.N. was causing problems between her mother and her mother's boyfriend. The officer took B.N. aside and asked her if she was having problems at home. B.N. told him that she was having problems with her mother's boyfriend. She said that he was making sexual advances toward her.

Because departmental policy called for referring the case immediately to the Exploited and Missing Children Unit (EMCU), Officer Noack did not pursue the topic much farther with B.N. He did, however, get basic information from her about the allegations. B.N. told him that over the previous 6 months there had been several times that the boyfriend had tried to get her to have sex with him, including asking her to touch his penis. She said these things mostly happened at a prior address, which she identified as 1401 South Pinecrest in Wichita.

Officer Noack made arrangements for B.N. to go with her uncle, with whom she was comfortable, and referred the case to the EMCU. Detective Tom Krausch was assigned to the case and over the next few days identified the mother's boyfriend as Jose Juan Huerta-Alvarez, the appellant. He also interviewed B.N. Detective Krausch and B.N. were the State's main witnesses at trial.

The original complaint charged Huerta-Alvarez with one count of rape and two counts of aggravated indecent liberties with a child, all identified as off-grid crimes occurring after July 1, 2006. Following the preliminary hearing, the first amended complaint was filed, which added a count of aggravated criminal sodomy and alternative counts of attempted rape and aggravated indecent liberties. One count of aggravated indecent liberties and the alternative counts of attempted rape and aggravated indecent liberties were identified as off-grid crimes. A second amended complaint was filed following the State's evidence at trial and was necessitated by the fact that the State was unable to get B.N. to repeat testimony she had offered at the preliminary hearing.

B.N. was often vague and somewhat contradictory in her various statements about what had happened. The closest she came to establishing dates of any particular incident was to say whether she thought it had occurred when she was living at the Pinecrest address or at the Woodlawn address. Ultimately, in the second amended complaint filed following the presentation of the State's evidence at trial, the State settled upon using dates obtained from Westar utility records to establish the dates of residence at the two addresses and thus the alleged dates of the crimes.

There were three incidents that B.N. recounted with some regularity, however. The first of these incidents occurred at the Pinecrest address where utility records established that her mother had been responsible for the utilities from August 23, 2005, until September 12, 2006. B.N. testified that it was before school in the morning and her mother was not in the house. She came out of the bathroom and discovered Huerta-Alvarez naked. She retreated to the bathroom again and yelled at him to get dressed. Eventually he told her he was dressed and she reemerged from the bathroom only to find him still naked. At that point either she ran or he pulled her into the bedroom where he pinned her on the bed and started to disrobe her. She testified that he attempted to put his penis in her vagina but she was able to bite his hand and get away. She grabbed her clothes and ran back to the bathroom. When she emerged again, he had left the apartment and was sitting in his truck outside.

A second incident which B.N. said happened at the Pinecrest apartment involved Huerta-Alvarez sticking his hand down her pants. She testified that his finger penetrated her vagina just a little bit and that it hurt because he has big fingers. The third incident involved Huerta-Alvarez attempting to put his penis in her mouth while she was sitting on the couch. She testified that this incident also occurred at the Pinecrest apartment.

At the urging of the prosecutor, B.N. repeatedly testified that other incidents happened at both the Pinecrest and Woodlawn residences. She also testified, in response to the prosecutor's prompting, that she was not lying and had no reason to make up her story.

Following the State's evidence, the State informed the court and defense counsel that Counts 5 and 6 of the amended complaint would be dismissed since B.N.'s testimony at trial did not support those counts. The second amended complaint, therefore, filed to conform to the evidence the State had presented, alleged the following charges, dates, statutes, and crime severity levels and categories:

I. Rape 8/23/05 to 12/16/06; 21-3502(a)(2)(c); SL 1, PF

II. Agg. Indecent Liberties 8/23/05 to 9/12/06; 21-3504(a)(3)(A); SL 3, PF

III. Agg. Criminal Sodomy 8/23/05 to 9/12/06; 21-3506(a)(1); SL 2, PF
IV. Agg. Indecent Liberties 9/19/06 to 12/16/06; 21-3504(a)(3)(A); Off-grid.

All three of the complaints filed in the case contained Huerta-Alvarez' year of birth, 1979, in the caption of the complaint, but none of the counts in any of the complaints alleged that he was over the age of 18 at the time of the offenses. All three of the complaints identify the rape charge as pursuant to K.S.A. 2005 Supp. 21-3502(a)(2)(c), which identifies an off-grid crime; however, because of the dates alleged, the amended and second amended complaints both identify the crime as a severity level 1 person felony, not as an off-grid crime. None of the counts of aggravated indecent liberties in any of the complaints cite either of the statutory sections, K.S.A. 21-3504(c) and K.S.A. 2006 Supp. 21-4643, that enhance the crimes to off-grid felonies; however, several of the counts, including two counts of aggravated indecent liberties with a child in the original complaint and two counts of aggravated indecent liberties with a child in the amended complaint and Count 4 of the second amended complaint, indicate at the bottom of the page that the sentence is off-grid.

No evidence was presented at trial concerning the defendant's age, and nothing in the evidence directly indicated what his age would have been at the time of the alleged offenses. The instructions requested by the defendant did not ask the jury to find the defendant's age. Any instructions requested by the State were not included in the record on appeal. The State had no objections to the instructions proposed and given by the court. The instructions given did not require the jury to find Huerta-Alvarez' age at the time of the offenses.

After having the entire testimony of B.N. read back to it, the jury convicted Huerta-Alvarez of Counts 2 and 4, the aggravated indecent liberties charges. Because of the dates alleged in the second amended complaint, the conviction under Count 2 is a severity level 3 person felony, while the conviction under Count 4 is an off-grid offense.

Huerta-Alvarez filed a motion for a downward departure from the life sentence applicable to Count 4. The motion alleges as

grounds that the defendant had no prior convictions; that he was acquitted of the rape and criminal sodomy counts, which would normally be thought of as the most serious; and that to impose a life sentence "for a count of fondling when defendant would have received a grid sentence for the count of rape is cruel and unusual punishment" in violation of the Eighth Amendment to the United States Constitution and Section 9 of the Kansas Constitution Bill of Rights. The motion further requested that Huerta-Alvarez be sentenced to 55 months, the low grid box number for aggravated indecent liberties.

The district court denied the motion for departure and imposed a life sentence with no chance of parole for 25 years on the primary offense of aggravated indecent liberties with a child contained in Count 4 of the second amended complaint. On Count 2, stating that he was concerned the legislature might change the law back and lower the sentences imposed under Jessica's Law, the judge imposed a sentence of 61 months, the high number in the grid box.

Huerta-Alvarez filed a pro se Notice of Appeal Out of Time, to which the State did not object. The defendant was allowed to file his appeal out of time.

## ANALYSIS

This is another in the line of cases including *State v. Gracey*, 288 Kan. 252, 200 P.3d 1275 (2009); *State v. Bello*, 289 Kan. 191, 211 P.3d 139 (2009); *State v. Gonzales*, 289 Kan. 351, 212 P.3d 215 (2009); and *State v. Morningstar*, 289 Kan. 488, 213 P.3d 1045 (2009). The appellant was convicted of a sex crime with a child under 14 years of age and sentenced pursuant to K.S.A. 21-4643, Jessica's Law, to a life sentence premised on the fact that he was older than 18 years of age when he committed the offenses, despite the fact that the State did not allege his age in the complaint, and the jury was not instructed to find his age beyond a reasonable doubt. Huerta-Alvarez argues that, as a result, his convictions and sentence violate the Sixth Amendment to the Constitution of the United States and Section 10 of the Kansas Constitution Bill of Rights. Although Huerta-Alvarez' brief does not specifically limit

his argument to his conviction under Count 4 of the second amended complaint, the argument is of necessity so limited.

*Complaint*

Huerta-Alvarez argues that the district court did not have jurisdiction to sentence him under K.S.A. 2006 Supp. 21-4643 because the complaint was defective in failing to allege that he was over the age of 18. This court recently reviewed the identical issue in *State v. Gracey*, 288 Kan. at 254-57, and *State v. Gonzales*, 289 Kan. at 365-69.

"Whether an information is sufficient to confer subject matter jurisdiction is a question of law over which an appellate court has unlimited review." *State v. Gracey*, 288 Kan. at 254 (citing *State v. McElroy*, 281 Kan. 256, 261, 130 P.3d 100 [2006]).

"Our review is unlimited where, as in this case, appellate arguments implicate concerns relating to statutory and constitutional interpretation. *State v. Bello*, 289 Kan. 191, 195, 211 P.3d 139, 142 (2009); *State v. Storey*, 286 Kan. 7, 9-10, 179 P.3d 1137 (2008) (statutory interpretation is question of law subject to de novo review); *State v. Allen*, 283 Kan. 372, 374, 153 P.3d 488 (2007) (constitutionality of sentencing statute is question of law subject to unlimited review). Whether a complaint or information is sufficient to confer subject matter jurisdiction is also a question of law and, therefore, the same unlimited standard of review applies." *State v. Gonzales*, 289 Kan. at 365-67 (citing *Gracey*, 288 Kan. at 254; *State v. McElroy*, 281 Kan. 256, 261, 130 P.3d 100 [2006]).

Huerta-Alvarez was charged in Count 4 of the second amended complaint with aggravated indecent liberties with a child. The complaint identified the count as a violation of K.S.A. 21-3504(a)(3)(A) and as being an off-grid felony but did not specifically allege that Huerta-Alvarez was 18 years of age or older. He was sentenced under K.S.A. 2006 Supp. 21-4643(a)(1)(C), which, by way of K.S.A. 21-3504(c) and K.S.A. 2006 Supp. 21-4706(d), provides the sentence for the off-grid version of K.S.A. 21-3504(a)(3)(A) when the defendant is 18 years of age or older and the victim is under the age of 14. See *Bello*, 289 Kan. at 197-98.

Huerta-Alvarez does not maintain that the complaint was fatally defective. Rather, he maintains that it charged a valid crime, just not the crime for which he was sentenced. He argues that, therefore, the court lacked jurisdiction to sentence him under K.S.A.

2006 Supp. 21-4643 to a life sentence with no chance of parole for 25 years. He maintains the sentence must be vacated and the case remanded for resentencing under the guidelines grid.

The court considered the identical issue in *Gracey*.

"The test used to evaluate the sufficiency of the charging document depends upon when the issue was first raised. *State v. Shirley*, 277 Kan. 659, 661, 89 P.3d 649 (2004). When the charging document is challenged for the first time on appeal, the defendant must show that the alleged defect either: (1) prejudiced the defendant's preparation of a defense; (2) impaired the defendant's ability to plead the conviction in any subsequent prosecution; or (3) limited the defendant's substantial rights to a fair trial. *McElroy*, 281 Kan. at 261. 'The longer it takes for the defendant to challenge the sufficiency of the information, the greater the presumption of regularity. [Citation omitted.]' *State v. Hall*, 246 Kan. 728, 761, 793 P.2d 737 (1990), *overruled in part on other grounds Ferguson v. State*, 276 Kan. 428, 78 P.3d 40 (2003)." *Gracey*, 288 Kan. at 254.

The State relies on *Gracey* to argue that the complaint was sufficient. Huerta-Alvarez raised no objection to the charging document. As in *Gracey*, he has made no showing that the alleged defect prejudiced his preparation for trial, impaired his ability to plead the conviction in any subsequent prosecution, or limited his substantial rights to a fair trial.

"The validity of a charging instrument is to be tested by reading the document in its entirety, and the elements of the offense may be gleaned from the document as a whole. *McElroy*, 281 Kan. 256, Syl. ¶ 3." *Gracey*, 288 Kan. at 256. In *Gracey*, the court reviewed the charging document and found that it set out in its caption that he was over the age of 18 and stated at the bottom that the charge was for an off-grid felony. In addition, the document set out all of the elements of aggravated indecent liberties with a child. *Gracey*, 288 Kan. at 256-57.

Applying this review to the charging document, or rather to the set of charging documents, in this case is not as simple a matter as the review of the complaint in *Gracey*. Nonetheless, all three of the complaints, including the two filed prior to trial and therefore, relevant to the preparation of Huerta-Alvarez' defense, contained the year of his birth in the caption of the complaint and alleged that at least one of the counts of aggravated indecent liberties was an off-grid offense.

*Gracey* concluded that, based on the limited standard of review applicable, the district court's decision to apply K.S.A. 2006 Supp. 21-4643 in sentencing Gracey was not reversible error. In *Gonzales*, 289 Kan. at 369, the court reviewed a complaint with virtually identical provisions and concluded, in light of *Gracey*, that the failure to specifically allege in the complaint that Gonzales was 18 years of age or older did not invalidate his conviction.

The facts in this case with regard to the charging documents are, in pertinent part, identical to those in *Gracey* and *Gonzales*. Reading the documents as a whole indicates that Huerta-Alvarez was adequately informed of both the crimes alleged and the penalty proposed. There is no indication that Huerta-Alvarez was unaware of the potential consequences of the crimes with which he was charged or that anything in the complaints filed against him prejudiced his defense. There are no grounds under this issue upon which to vacate his sentence.

### Jury Instructions

Huerta-Alvarez relies upon the guarantee of the right to a jury trial in the Sixth and Fourteenth Amendments to the United States Constitution, along with the similar guarantee contained in Section 10 of the Kansas Constitution Bill of Rights, and on *Apprendi v. New Jersey*, 530 U.S. 466, 490, 147 L. Ed. 2d 435, 120 S. Ct. 2348, (2000), to argue that the failure to instruct the jury to find his age at the time of the alleged offenses was clear error, requiring the court to reverse the conviction and remand for a new trial. Again, Huerta-Alvarez does not specifically limit this argument to his conviction under Count 4 of the second amended complaint, but the argument is necessarily so limited.

Instructions are erroneous "only if the reviewing court is firmly convinced there is a real possibility that the jury would have rendered a different verdict if the error had not occurred. [Citations omitted.]" *State v. Davis*, 275 Kan. 107, 115, 61 P.3d 701 (2003). Further, Huerta-Alvarez points out that although failure to instruct a jury on an element of the crime is error, this court has held that a constitutional harmless error analysis can still apply. See *State v. Daniels*, 278 Kan. 53, 62-63, 91 P.3d 1147, *cert. denied* 543 U.S.

982 (2004); *State v. Reyna*, 290 Kan. 667, Syl. ¶ 9, 234 P.3d 761 (2010).

*Gonzales*, relying on *Bello*, also disposes of this argument.

"Gonzales also contends that omitting the defendant's age—an essential element—from the charging document and from the jury instructions requires reversal of his conviction for aggravated indecent liberties with a child under the age of 14. This argument has no merit in light of the recent case of *Bello*, 289 Kan. at [195-200].

"Like Gonzales, Bello was convicted of aggravated indecent liberties with a child under the age of 14 and aggravated criminal sodomy. With regard to both of Bello's crimes of conviction, because he was 18 years of age or older and the victim was under 14 years of age, the crimes were off-grid severity level crimes under K.S.A. 21-4706. Asserting that the defendant's age is an essential element and making the same arguments that Gonzales now brings before this court, Bello characterized K.S.A. 2006 Supp. 21-4643 as a statute which establishes a separate, aggravated form of the enumerated crimes. This court rejected the idea that separate crimes were created by the statute.

"Instead, we observed that each of the statutes defining Bello's crimes—aggravated criminal sodomy and aggravated indecent liberties with a child—'sets forth two separate levels of the offense which can apply to the act which Bello committed: one a KSGA nondrug grid box offense, and the other an off-grid offense.' *Bello*, 289 Kan. at 198. We explained that '[t]he determination of which offense applies turns on whether the offender was age 18 or older when committing the criminal act.' *Bello*, 289 Kan. at 198.

"We further noted that the crime-defining statutes in Bello are comparable in structure to the theft statute, K.S.A. 21-3701, which describes varying levels of offenses based upon the additional fact of the stolen property's value. *Bello*, 289 Kan. at 198; see also, *e.g.*, *State v. Piland*, 217 Kan. 689, Syl. ¶ 3, 538 P.2d 666 (1975) (where value of stolen property is at issue, trial court should instruct the jury regarding the element of value and require a jury finding as to value).

"Hence, although K.S.A. 21-4643 *reiterates* the age factor which elevates the sentence for aggravated indecent liberties with a child to a hard 25 life sentence, the fact remains that the severity-enhancing factor is initially identified in K.S.A. 21-3504, the statute defining the elements of the crime. *Bello*, 289 Kan. at 198. In other words, as applicable to the present case, the defendant's age is an element of the crime of aggravated indecent liberties with a child when the crime is charged as an off-grid severity level offense. Omitting the defendant's age from a complaint or from jury instructions does not eliminate the existence of the crime of aggravated indecent liberties with a child or invalidate a criminal conviction for that offense—the crime severity level is merely characterized as the applicable KSGA severity level stated in K.S.A. 21-3504(c) rather than as an off-grid offense. Gonzales' conviction of aggravated indecent liberties with a child is valid." *Gonzales*, 289 Kan. at 369-70.

Based on *Gonzales*, therefore, the fact that the trial court did not instruct the jury to find Huerta-Alvarez' age at the time of the offense does not invalidate his conviction for aggravated indecent liberties with a child.

This analysis does not, however, dispose of the issue whether the failure to instruct the jury to find Huerta-Alvarez' age renders his sentence invalid. *Cf. Gonzales*, 289 Kan. at 370-71. Application of the rule of *Apprendi*, 530 U.S. at 490, settles this issue and dictates that the life sentence imposed for Count 4 of the complaint must be vacated and the case remanded for sentencing under the applicable Kansas Sentencing Guidelines Act (KSGA) grid box. *Apprendi* holds that the right to trial by jury guaranteed by the Sixth Amendment to the United States Constitution, applicable to the States under the Fourteenth Amendment to the United States Constitution, requires that any fact which enhances the sentence imposed beyond the statutory maximum must be found by a jury. This court has held in *Bello, Morningstar*, and *Gonzales* that *Apprendi* requires vacation of life sentences under Jessica's Law when the jury was not instructed to find the defendant's age and the sentence instead rested upon a determination of the age by the trial judge.

The State makes two arguments relevant to this issue. First, it cites a line of cases holding that prior convictions need not be alleged in the charging document nor found by the jury when they are simply a fact that establishes the class or penalty of the crime. Second, the State makes an argument based upon statutory construction that the defendant's age is not an element of aggravated indecent liberties with a child and, therefore, the jury need not be instructed to find it. Both of the State's arguments are invalid in light of the holding of *Apprendi* that any fact, other than the fact of a prior conviction, that enhances the sentence beyond the statutory maximum must be determined by a jury.

In the recent cases of *Reyna*, 290 Kan. at 681, *State v. Garza*, 290 Kan. 1021, Syl. ¶ 3, 236 P.3d 501 (2010), and *State v. Martinez*, 290 Kan. 992, Syl. ¶ 14, 236 P.3d 481 (2010), we held that we would apply harmless error analysis to this issue and find harmless error where the evidence before the jury of the sentence-enhanc-

ing fact was overwhelming and essentially uncontroverted, leading the court to conclude that the jury would have found the existence of the fact had it been properly instructed. See *Daniels*, 278 Kan. at 64-65; *Neder v. United States*, 527 U.S. 1, 144 L. Ed. 2d 35, 119 S. Ct. 1827, (1999). In *Reyna*, the defendant took the stand and stated his age during the trial. No comparably direct evidence of Huerta-Alvarez' age was presented in this case. After oral argument and the publication of *Reyna*, however, the State added to the record on appeal a copy of a transcript of Huerta-Alvarez' interview with Detective Krausch. The State points out that this transcript was admitted into evidence and went to deliberations with the jury. The first page of the transcript is divided into two columns, the first containing the dialogue as given, the second column containing the translation to English of any parts of the dialogue conducted in Spanish. The speakers are identified by initials although there is no key matching full names to the initials. The dialogue on the first page is as follows:

"JOSÉ JUAN HUERTA ÁLVAREZ
CASE # 07CR27
DC: I'll put this over here
OA: Va a poner la chamarra ah.            He's going to put the coat there.
JH: OK
OA: Do you have the case number yet?
DC: What's that?
OA: Do you have the case number yet?
DC: Uh, 97265
OA: . . .
DC: On
OA: . . . on the date of birth I guess
DC: 1,5,79
OA: Aha
DC: Is that the day of birth?
OA: . . . his address
DC: What's up with the Alvarez?
OA: . . . his mom's last name"

Huerta-Alvarez' date of birth is January 5, 1979, but that is less than clear on the face of this transcript. Further, we are left to speculate as to what extent or whether the jury even reviewed the transcript during its deliberations. Under these circumstances,

there is no overwhelming or uncontroverted evidence upon which to base a harmless error finding. The life sentence must be vacated and the case remanded for resentencing on Count 4 under the applicable KSGA grid box.

## Sufficiency of the Evidence

Huerta-Alvarez next argues that there was insufficient evidence to support his conviction on Count 4 because "[t]he State failed to prove that [he] was 18 years of age or older, an element of aggravated indecent liberties under K.S.A. 21-3504(a)(3)(A) and K.S.A. 21-4643(a)(1)."

"When a defendant challenges the sufficiency of the evidence in a criminal case, the standard of review is whether after reviewing all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Gant,* 288 Kan. 76, 83, 201 P.3d 673 (2009) (citing *State v. Gutierrez,* 285 Kan. 332, 336, 172 P.3d 18 [2007]).

Appellant's argument under this issue is essentially a refashioning of the argument based on *Apprendi* set out under the first issue. He argues that under the analysis of *Apprendi,* any fact that increases the statutory maximum penalty for the crime becomes an element of the offense which must therefore be proved beyond a reasonable doubt to the jury. The remedy to which he is entitled for failure of the State to produce any evidence on this element, he maintains, is to "reverse and remand with directions to impose a sentence under the guidelines." Because we have remanded with directions to resentence him on Count 4 under the guidelines above, it is unnecessary to address this argument.

## Prosecutorial Misconduct

Huerta-Alvarez argues that the prosecutor infringed his right to a fair trial by improperly bolstering the State's witness during questioning and closing argument and by telling the jury his opinion of the evidence during closing argument. The State argues that Huerta-Alvarez' claims concerning questioning by the prosecutor are not properly before the court because no contemporaneous objection was made at trial and that the prosecutor's statements

during closing argument do not amount to prosecutorial misconduct.

A contemporaneous objection must be made to all evidentiary claims—including questions posed by a prosecutor and responses to those questions—to preserve those claims for appellate review. *State v. King*, 288 Kan. 333, 349, 204 P.3d 585 (2009). No contemporaneous objection is required, however, to review a prosecutor's statements made during closing argument for misconduct. 288 Kan. at 349.

Huerta-Alvarez first complains of questions posed to B.N. by the prosecutor at trial which elicited (presumably by design) responses from her assuring the jury that she was not lying and had no motive to fabricate her story. Trial counsel failed to object to these questions. As a result, whether they amounted to prosecutorial misconduct is not properly before the court.

Appellate review of an allegation of prosecutorial misconduct involving improper comments to the jury during closing argument requires a two-step analysis. First, the appellate court decides whether the comments were outside the wide latitude that the prosecutor is allowed in discussing the evidence. Second, if misconduct is found, the appellate court must determine whether the improper comments constitute plain error; that is, whether the statements prejudiced the jury against the defendant and denied the defendant a fair trial. *State v. McReynolds*, 288 Kan. 318, 323, 202 P.3d 658 (2009).

In the second step of the two-step analysis, the appellate court considers three factors:

" '(1) whether the misconduct was gross and flagrant; (2) whether the misconduct showed ill will on the prosecutor's part; and (3) whether the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of jurors. None of these three factors is individually controlling. Moreover, the third factor may not override the first two factors unless the harmless error tests of both K.S.A. 60-261 [refusal to grant new trial is inconsistent with substantial justice] and *Chapman v. California*, 386 U.S. 18,[ 22,] 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967) [conclusion beyond a reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial], have been met. [Citations omitted.]' [Citation omitted.]" *McReynolds*, 288 Kan. at 323.

"When a defendant claims that a prosecutor committed reversible misconduct, the prejudicial nature of alleged errors is analyzed in the context of the trial record as a whole." *State v. Murray*, 285 Kan. 503, 511, 174 P.3d 407 (2008) (citing *State v. Whitaker*, 255 Kan. 118, 134, 872 P.2d 278 [1994]).

Huerta-Alvarez complains generally about statements made by the prosecutor concerning B.N.'s credibility during the prosecutor's closing argument and, specifically, about one statement made during the rebuttal portion of his closing argument. Generally, the prosecutor's closing argument focused on B.N.'s credibility since the case boiled down to her word against Huerta-Alvarez' word. Specifically, Huerta-Alvarez objects to the following statement:

"There's something I forgot to mention. You may not remember this, but when the Judge read the charges to you, there were six charges. At the end of the case, I dismissed Counts 4 and—or excuse me, 5 and 6, because there were some things she just couldn't say on the stand, for reasons I don't know. So, in case you remember there were Counts 5 and 6, I dismissed them and gave you the State's case."

A review of the trial record as a whole reveals that the credibility of B.N. was the key issue in the case.

"Generally, a prosecutor may not offer the jury his or her personal opinion as to the credibility of witnesses. [Citation omitted.] On the other hand, a prosecutor is free to craft an argument that includes reasonable inferences to be drawn from the evidence. [Citation omitted.] That latitude would include explaining to the jury what it should look for in assessing witness credibility, especially when the defense has attacked the credibility of the State's witnesses." *State v. Scaife*, 286 Kan. 614, 623-24, 186 P.3d 755 (2008).

The prosecutor's remarks in closing, as Huerta-Alvarez now complains, were generally in the nature of reviewing what B.N. said, asking the jury to assess the credibility of her statements, and querying the jury why she would not have made up a more convenient story if in fact she had fabricated the story at all. The argument was within the latitude allowed the prosecutor when the key issue is the credibility of the complaining witness.

On the other hand, the statement in rebuttal by the prosecution concerning the State's dismissal of Counts 5 and 6 clearly goes beyond the evidence in the case.

"It is well established that the fundamental rule in closing arguments is that a prosecutor must confine his or her comments to matters in evidence. When the prosecutor argues facts that are not in evidence, misconduct occurs, and the first prong of the test for prosecutorial misconduct has been met. *State v. Murray*, 285 Kan. 503, 512, 174 P.3d 407 (2008). In addition, when a prosecutor refers to facts not in evidence, such statements tend to make the prosecutor his or her own witness who offers unsworn testimony not subject to cross-examination. See [*State v.*] *Pabst*, 268 Kan. [501, 510, 996 P.2d 321(2000)]; *People v. Hill*, 17 Cal. 4th 800, 828, 72 Cal. Rptr. 2d 656, 952 P.2d 673 (1998). This unsworn testimony, ' " 'although worthless as a matter of law, can be "dynamite" to the jury because of the special regard the jury has for the prosecutor, thereby effectively circumventing the rules of evidence.' " [Citations omitted.]' 17 Cal. 4th at 828." *State v. Morris*, 40 Kan. App. 2d 769, 791-792, 196 P.3d 422 (2008).

The statement regarding the dismissed counts, therefore, was outside the wide latitude allowed the prosecution in discussing the evidence.

What is more difficult to assess is whether the statement amounts to plain error, *i.e.*, whether the statement prejudiced the jury against the defendant and denied the defendant a fair trial. Application of the first two factors, whether the misconduct was gross and flagrant, and whether it showed ill will on the prosecutor's part, lead to negative conclusions in the context of the entire trial transcript. There is nothing in the transcript to indicate that the prosecutor consciously sought to exceed the bounds of propriety.

Application of the third factor, whether the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of the jurors, is not simple. This inquiry may not override the first two factors unless the harmless error tests of both K.S.A. 60-261 and *Chapman v. California*, have been met. Under K.S.A. 60-261, the court must consider whether refusal to grant a new trial is inconsistent with substantial justice. Under *Chapman*, the court must reach a conclusion beyond a reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial, in order to affirm the convictions.

While B.N.'s testimony was often less than direct, she was clear that Huerta-Alvarez molested her on at least three occasions. It cannot be said that refusal to grant a new trial is inconsistent with

substantial justice. While the prosecutor's remarks were inappropriate, it is unlikely, in the context of the trial as a whole, that the outcome of the trial was directly attributable to those remarks.

*Sentencing Arguments*

Huerta-Alvarez argues that the mandatory minimum sentences in K.S.A. 2006 Supp. 21-4643 are disproportionate and violate the Eighth and Fourteenth Amendments to the United States Constitution and Section 9 of the Kansas Constitution Bill of Rights. He also argues that the district court erred in denying his motion for departure from the life sentence because there were substantial and compelling reasons to grant it.

We have addressed similar arguments in three recent decisions. See *State v. Spotts*, 288 Kan. 650, 206 P.3d 510 (2009); *State v. Thomas*, 288 Kan. 157, 199 P.3d 1265 (2009); *State v. Ortega-Cadelan*, 287 Kan. 157, 194 P.3d 1195 (2008); but see *State v. Seward*, 289 Kan. 715, 217 P.3d 443 (2009). Because the sentence in this case has been vacated, we need not reach these issues here.

Finally, Huerta-Alvarez argues that imposition of the aggravated grid box number, 61 months, for his conviction under Count 2 of the complaint, aggravated indecent liberties not subject to sentencing under K.S.A. 2006 Supp. 21-4643, violates the holding of *Apprendi v. New Jersey*, because no aggravating circumstances were submitted to or found by a jury. Huerta-Alvarez concedes that this issue has been decided against him in the court's decision in *State v. Johnson*, 286 Kan. 824, 840-52, 190 P.3d 207 (2008), but includes the issue to preserve it for federal review. There is no reason for us to revisit the issue. We dismiss this claim for lack of jurisdiction.

Huerta-Alvarez' convictions are affirmed. The claim regarding sentence for Count 2 of the second amended complaint is dismissed. The sentence on Count 4 of the second amended complaint is vacated, and the case is remanded for resentencing under the Kansas Sentencing Guidelines Act on that count.

DAVIS, C.J., not participating.

* * *

JOHNSON, J., concurring: I concur with the majority's result. Specifically, I agree with vacating Huerta-Alvarez' sentence on Count 4 and remanding for resentencing as a severity level 3 offense, because that is the crime with which he was charged and for which he was convicted by the jury. See *State v. Reyna*, 290 Kan. 667, 234 P.3d 761 (2010). (JOHNSON, J., dissenting).