NOT DESIGNATED FOR PUBLICATION

No. 114,577

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CITY OF OVERLAND PARK,
*Appellee*,

v.

JAMES L. BROOKS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; THOMAS M. SUTHERLAND, judge. Opinion filed July 1, 2016. Affirmed.

*James L. Brooks*, appellant pro se.

*John J. Knoll*, senior assistant city attorney, of Overland Park, for appellee.

Before MALONE, C.J., LEBEN, J., and JOHNSON, S.J.

*Per Curiam*:  James L. Brooks, pro se, appeals from his jury convictions for violating five different provisions of the Overland Park Municipal Code (O.P.M.C.) regarding his failure to maintain the exterior of a residence he owned in the City of Overland Park (City). On appeal, Brooks argues that his convictions should be reversed because:  (1) city housing code violations may not be prosecuted in municipal court, (2) the district court erred when it refused to admit his exhibits, (3) the City failed to legally establish that he owned the property at issue, and (4) the City's housing code ordinances improperly impose absolute liability upon proof of a violation. From the record on appeal we have been provided we find no error. We affirm Brooks' convictions.

1

FACTUAL AND PROCEDURAL BACKGROUND

On June 18, 2014, the City issued Brooks citations for violating, on that same date, five separate provisions of the O.P.M.C. with respect to property located on 64th Street in Overland Park. Specifically, Brooks was cited for violating O.P.M.C. 7.26.070 (2008 Supp.) (failure to maintain exterior wall surfaces in good repair); 7.26.075 (2008 Supp.) (failure to maintain exterior trim in good repair); 7.26.090 (2008 Supp.) (failure to maintain roof, eave, soffit, and guttering in good repair); 7.26.160 (2013 Supp.) (failure to maintain hard surfaces, walkways, and driveways to the extent they cause a safety hazard); and 16.190.304.2 (2001) (exterior structure-protective treatment). The charges were all misdemeanors.

On October 14, 2014, the municipal court conducted a trial on the charges. Brooks represented himself. The judge convicted Brooks on all five charges and fined him $500 on each charge. Brooks timely appealed his convictions to the Johnson County District Court.

District court documents in our record on appeal indicate that Brooks continued to represent himself. The record contains no indication Brooks ever sought appointment of counsel. Brooks demanded a jury trial. Each party timely filed a witness and exhibit list on April 6, 2015. At the pretrial conference April 16, 2015, the City waived its option to seek jail time on any conviction that might result from the trial.

On April 20, 2015, Brooks' municipal court appeal was tried to a six-person jury in the district court. The jury found Brooks guilty on all five charges. The district court waived the requirement that Brooks file a motion to arrest judgment but ordered Brooks to brief any reason to arrest judgment he desired to assert. Brooks timely filed his brief raising numerous claims of error. The district court's specific ruling on the arrest of judgment is not included in the record on appeal. The district court's sentencing journal

entry reflects that on July 23, 2015, the court ruled on posttrial motions, but it does not detail those rulings. The court must have denied Brooks any posttrial relief because it imposed a $500 fine on each of the five convictions and assessed Brooks the filing fee costs. Brooks filed a timely appeal to this court.

ANALYSIS

Brooks, again pro se, challenges his convictions on numerous grounds he asserts under four headings. We address Brooks' claims of error in the order he briefed them.

*Brooks Questions Whether City Code Violations Can Be Prosecuted In Municipal Court*

Brooks states his first point on appeal as a question:  "Do administrative law courts lack essential Article III powers?" He argues, it appears, that his convictions should be overturned because the City's use of the municipal court to prosecute code violations is contrary to certain constitutional restrictions on administrative tribunals. He contends that the City's municipal court illegally and unconstitutionally functions as an administrative law court when it adjudicates housing code violation charges.

Brooks did raise a similar claim in his brief supporting arrest of judgment in the district court. But the district court's ruling on Brooks' motion, whether it was oral or written, is not included in the record on appeal. We can infer that the court denied relief because it said in its journal entry from the July 23, 2015, hearing that it ruled on posttrial motions, then proceeded to sentencing. We do not know the reasons for the denial. The party claiming an error has the burden of designating a record that affirmatively shows prejudicial error. Without such a record, an appellate court presumes the action of the district court was proper. *State v. Bridges*, 297 Kan. 989, 1001, 306 P.3d 244 (2013). Thus, we may presume that the district court properly denied Brooks any arrest of judgment on this point.

3

Even if we determined that Brooks preserved his right to appeal this point of law, he would still not be entitled to relief. Article 3, § 1, of the Kansas Constitution provides, in relevant part: "The judicial power of this state shall be vested exclusively in one court of justice, which shall be divided into one supreme court, district courts, and such other courts as are provided by law." Municipal courts are provided by law. See K.S.A. 12-4101 *et seq.* Municipal courts have jurisdiction "to hear and determine cases involving violations of the ordinances of the city." K.S.A. 2015 Supp. 12-4104(a). Moreover, a municipal judge has the power to hear and determine all cases properly brought before the court and to sentence those found guilty to a fine and/or confinement in jail. K.S.A. 2015 Supp. 12-4106(b). Brooks' contention that the City's municipal court is actually an unconstitutional administrative law court is without merit.

*Brooks has failed to show that the district court erroneously denied him the opportunity to present his evidence*

Next, Brooks contends the district court erroneously deprived him of the opportunity to present "any evidence" to the jury showing that he was not the owner of the property at issue. Brooks appears to refer to exhibits the district court refused to admit rather than any denial of Brooks' right to testify or call witnesses. As his brief makes clear, Brooks' denial of ownership is based on the fact that prior to the charged violations a judgment had been entered against him foreclosing a mortgage on the subject property. However, Brooks acknowledges that the judgment was not final at the time he was cited because he had appealed that judgment. He essentially concedes in his brief his ownership was only terminated when, as he puts it: "The Kansas Supreme Court on Wednesday, July 29th, 2015 delivered a terse notification that Brooks had lost the rental duplex at issue (District Court case 05CV1377 and Appellate Case 13-110423-A)."

At any rate, our review of this evidentiary issue is precluded by Brooks' failure to include transcripts of the district court proceedings in the record on appeal. Although

4

Brooks filed motions requesting that the transcripts be provided at public expense, the district court denied the motions. The court concluded that Brooks was not indigent and had no liberty interest at stake because he was not facing a jail sentence. Brooks later attempted to file a "Transcript from Memory" purporting to be pursuant to Supreme Court Rule 3.04(a) (2015 Kan. Ct. R. Annot. 25). The district court refused to allow that substitute as the rule only applies when the transcript of a hearing or trial is unavailable. Brooks did not maintain that transcripts were unavailable, he just disputed whether he should pay for them. Brooks did not appeal from the district court's rulings regarding the transcripts.

Without a transcript it is impossible for us to evaluate the propriety of the evidentiary ruling Brooks challenges. We cannot reverse for the erroneous exclusion of evidence without reviewing a record of that exclusion, which record Brooks was required to make pursuant to K.S.A. 60-405. Also, and again, the burden is on the party claiming prejudicial error to provide a record demonstrating that error. Without such a record, we presume the action of the district court was proper. See *Bridges*, 297 Kan. at 1001.

*Brooks states his third issue as follows: "Are malicious prosecutions, double jeopardy, defective complaints, defective jury instructions, lieing [*sic*] by all lawyers and judges, and jumping jurisdiction all avenues to extortion and racketeering?*

As is apparent, Brooks next raises several arguments relating to the jurisdiction of the municipal and district courts, defective complaints, double jeopardy, and defective jury instructions. The underlying basis for these claims is Brooks' assertion that he did not own the property at issue at the time of the alleged violations because it had been foreclosed upon before the violations occurred. As a result, Brooks alleges that these prosecutions were "malicious, violations of due process, and initiated only for the purpose of extortion and racketeering" and otherwise makes disparaging remarks about the attorneys and judges involved in his several cases.

5

Brooks appears to have raised these or similar arguments before the district court in his brief supporting the arrest of judgment. Because the district court's ruling on Brooks' motion is not included in the record on appeal, however, we may presume that the district court properly denied relief with respect to these claims. See *Bridges*, 297 Kan. at 1001. Moreover, our review of these claims is further hindered by the fact that no transcripts of the proceedings below are included in the record on appeal. We have no way of knowing what, if any, evidence was presented to establish Brooks' ownership of the property. We may presume that Brooks' ownership of the property was established at trial. See 297 Kan. at 1001.

The instructions Brooks claims are defective, though, are part of the record on appeal. He asserts that the instructions misled the jury because they did not include a definition of "ownership." Brooks acknowledged in his brief supporting an arrest of judgment that he did not request any jury instructions at all. He does not maintain otherwise on appeal. A party who did not object to an instruction given at trial can only obtain relief on appeal if the instruction given was clearly erroneous. K.S.A. 2015 Supp. 22-3414(3); *State v. Smyser*, 297 Kan. 199, 204, 299 P.3d 309 (2013). When determining whether an instruction is clearly erroneous, we engage in a two-step analysis. First, we consider whether any error occurred, exercising an unlimited review of the entire record to determine whether the instruction was legally and factually appropriate. Second, if we find error, we must determine whether we are firmly convinced that the jury would have reached a different verdict without the error. *State v. Clay*, 300 Kan. 401, 408, 329 P.3d 484, *cert. denied* 135 S. Ct. 728 (2014).

The elements instructions on each of the five separate ordinance violations charged told the jury the City was required to prove that Brooks "owned" the subject property, he failed to maintain it contrary to relevant spelled-out ordinances, and he did so in Overland Park on or about June 18, 2014. Brooks was free to argue that he did not own the property. The verdict forms confirm that the jury found Brooks guilty of all five

charges. In spite of Brooks' efforts to complicate its meaning, "owned" is not a technical term. It is an ordinary word in common use and required no special definition. The instructions the court gave were legally and factually appropriate. The district court did not err when it did not give, *sua sponte*, a definition of "owned" or "ownership." Brooks' claim of instructional error fails.

The citations Brooks claims are defective are also in the record on appeal. He maintains that they are defective because they do not specify that he was the owner of the property where the code violations were occurring. But we are hamstrung in our ability to analyze his claims of defect because, again, we do not have a transcript indicating the district court's reasons for rejecting Brooks' argument. Moreover, we do not know if the defect Brooks asserts is based on a City ordinance defining "citation" or on K.S.A. 12-4113(g): Brooks does not cite for us, or provide us with, the law on which he bases his defect claim. We do see from the municipal court's docket sheet entries that on July 8, 2014, the appearance date shown in the citations, Brooks appeared in court. The docket sheets indicate that "[c]omplaint read to [Brooks]. [Brooks] understands complaint—per [Brooks]. [Brooks] pleads [not guilty]."

Because the district court waived the requirement for a motion for arrest of judgment and Brooks briefed his entitlement to such relief, we can review this defective citation issue. In this situation we employ what is referred to as the pre-*Hall* standard. Our Supreme Court has explained:

> "Under the pre-*Hall* standard, an information is sufficient if it substantially follows the language of the statute or charges the offense in equivalent words or others of the same import, so long as the defendant is fully informed of the particular offense charged and the court is able to determine under what statute the charge is founded." *State v. Reyna*, 290 Kan. 666, Syl. ¶ 6, 234 P.3d 761, *cert. denied* 562 U.S. 1014 (2010).

Brooks does not deny that the citations substantially follow the language of the ordinances he is accused of violating. Nor does he deny that he was fully informed of his charges. He does not claim that the court could not determine under what ordinance each charge was founded, as each ordinance number was on the citation along with language of the ordinance violation charged. He simply insists that somewhere in the citation it had to specifically refer to him as the owner of the property.

We disagree. We review a charging document's language as a whole, and we liberally construe it in favor of validity. Thus, we will decline to find a charging document invalid "unless it is so defective that it does not, by any reasonable construction, charge an offense for which the defendant [was] convicted." *State v. McElroy*, 281 Kan. 256, Syl. ¶ 3, 130 P.3d 100 (2006). Whether a charging document confers subject matter jurisdiction on the court is a question of law over which we exercise unlimited review. *State v. Huerta-Alvarez*, 291 Kan. 247, 254, 243 P.3d 326 (2010). The citations here identified Brooks as the accused, identified the address of the offending property, and specified by ordinance number and ordinance language the violations he had allegedly committed. It is true that to obtain a conviction the City was required to prove beyond a reasonable doubt that Brooks owned the property. But we decline to find that the citations here were fatally defective because they did not specifically say that the accused violator of the ordinances was the owner of the violating property.

Finally, under this heading, Brooks refers to recognized legal concepts like double jeopardy and malicious prosecution as well as other concepts less recognizable. However, he does not actually brief these remaining points, he just makes conclusory claims without citation to authority. Brooks has failed to brief these points, and we deem them waived and abandoned. See *State v. Boleyn*, 297 Kan. 610, 633, 303 P.3d 680 (2013).

8

*Brooks states his fourth issue: "Do the City's ordinances impose absolute liability either through an Article III or an Article II court?"*

As a threshold matter we disregard Brooks' references to Article III and Article II courts. As we noted above, municipal courts are authorized by statute.

Brooks contends that proof of an ordinance violation requires a showing of criminal intent unless the ordinance contains the phrase "there is an absolute liability" and does not permit any sentence of jail. In response, the City contends that the ordinances impose absolute liability that do not require proof of intent.

To the extent that Brooks raised this issue in his motion to arrest judgment, we may presume that the district court properly denied the motion on this basis because the district court's ruling is not included in the record on appeal. See *Bridges*, 297 Kan. at 1001.

Additionally, Brooks is not entitled to relief on the merits. Resolution of this issue involves the interpretation of statutes and ordinances, which are questions of law over which an appellate court exercises unlimited review. *City of Wichita v. Hackett*, 275 Kan. 848, 850, 69 P.3d 621 (2003).

"An absolute liability offense, unlike most other crimes, does not require any criminal intent. The only proof required to convict an individual of an absolute liability offense is that the individual engaged in the prohibited conduct." *State v. Hopper*, 260 Kan. 66, 70, 917 P.2d 872 (1996). In Kansas, absolute liability is limited to circumstances defined in K.S.A. 2015 Supp. 21-5203, which states in relevant part:

> "A person may be guilty of a crime without having a culpable mental state if the crime is:

9

"(a) A misdemeanor, cigarette or tobacco infraction or traffic infraction and the statute defining the crime clearly indicates a legislative purpose to impose absolute liability for the conduct described."

See also K.S.A. 2015 Supp. 21-5202(d) ("If the definition of a crime does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element.").

The ordinances under which Brooks was convicted are misdemeanors. See K.S.A. 2015 Supp. 21-5102(d). These ordinances make it unlawful for the owner of a residence to fail to maintain the exterior of the residence in certain respects. By definition, the ordinances plainly dispense with any mental element. See O.P.M.C. 7.26.070; 7.26.075; 7.26.090; 7.26.160; 16.190.304.2; see also O.P.M.C. 7.26.035 ("The owner of the land shall maintain such land and structures thereon in compliance with the requirements set forth in this chapter. A person shall not occupy as owner-occupant or allow another to occupy or use land or structures which do not comply with the requirements of this chapter."). The ordinances under which Brooks was convicted impose absolute liability, and no proof of his intent to violate them was required.

Affirmed.